THE STATE, EX REL. SIGALL ET AL., *v.* AETNA CLEANING CONTRACTORS OF CLEVELAND, INC., ET AL., APPELLANTS.

[Cite as State, ex rel. Sigall, v. Aetna (1974), 47 Ohio App. 2d 242.]

(Nos. 33583 and 33657—Decided November 7, 1974.)

*Mr. Leonard S. Sigall* and *Mr. W. Joseph Strapp*, for appellees.

*Mr. William J. Brown*, attorney general, and *Mr. James E. Michael*, for amicus curiae.

*Messrs. Ginsberg, Guren & Merritt*, *Mr. Kenneth G. Weinberg*, of counsel, *Messrs. Burke, Haber & Berick*, *Mr. Stephen T. Parisi*, of counsel, and *Mr. Steven S. Boyton*, for appellant.

*Mr. Mortimer Riemer*, for intervenors.

JACKSON, J. This is an appeal from a decision of the Cuyahoga County Common Pleas Court permanently enjoining the further performance of a contract entered into between the Aetna Cleaning Contractors of Cleveland, Inc. (hereinafter "Aetna") and Kent State University (hereinafter "Kent State").

The contract in question provides that Aetna shall perform custodial services at thirteen Kent State buildings. Civil service employees, hired directly by Kent State, perform 75 to 80 percent of all the custodial work at Kent State. In some buildings civil service employees performed custodial duties during the day while Aetna custodial employees work at night. The civil service employees and the Aetna employees do substantially the same work. Aetna employees were paid $1.94 per hour at the time of the hearing before the trial court. Custodial employees in the classified civil service are assigned by statute a "pay range number." Testimony elicited at the hearing below indicated that the civil service custodial employees were paid a minimum of $2.55 per hour, plus fringe benefits.

The trial court found that the contract in question was illegal in that it violated constitutional and statutory law of Ohio relating to civil service employment. Kent State, Aetna, the President of Kent State, and the various officers and members of the Board of Trustees of Kent State have perfected this appeal.

A threshold question raised by appellants is whether plaintiff appellee Herschel M. Sigall had standing to prosecute this action. Plaintiff brings this action as a taxpayer

and as Director, Division of Institutions and Universities, Ohio Civil Service Employees Association. Statutory recognition of the right of any taxpayer to bring an action to restrain payment to any person employed in violation of the civil service laws is found in R. C. 124.63.[1] The suit in question maintains that Aetna people were employed in violation of the civil service laws. Appellants' objection to plaintiff's standing is consequently not well taken.

The trial court's rationale ruling on the issue presented by this case is revealed in a paragraph taken from the court's memorandum of opinion:

"In effect the parties have agreed a state supported university is subject to the Civil Service laws of Ohio and that 'custodial employees' constitute a classification under R. C. 143.09. The question presented is whether there is some defense which would make the outside contracting of these services legal."

The trial court then found that defendants had not raised any valid "defenses," and therefore granted the injunction.

This approach begs the question by beginning with a premise that the contract between Aetna and Kent State is illegal in the absence of what the court termed "valid defenses."

The issue presented by this case is whether a state university may lawfully contract with an independent contractor to perform services which could also be performed for the university by classified civil service employees.

Briefly stated, plaintiffs' position is that the Ohio Constitution and civil service statutes, by implication, require that a state university employ only civil service employees to perform services which fall within one of the civil service classifications established in R. C. 124.14. This position is based upon Section 10, Article XV of the Ohio Constitution, and R. C. 124.06.

Section 10, Article XV of the Ohio Constitution, provides that:

---

[1] Renumbered from R. C. 143.47, effective December 4, 1973.

"Appointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, so far as praticable, by competitive examinations. Laws shall be passed providing for the enforcement of this provision."

R. C. 124.06 provides, so far as is pertinent, as follows:

"No person shall be appointed, removed, transferred, laid off, suspended, reinstated, promoted, or reduced as an officer or employee in the civil service, in any manner or by any means other than those prescribed in sections 124.01 to 124.64 of the Revised Code, and the rules of the director of adminstrative services or the municipal civil service commission within their respective jurisdictions."

The law of Ohio, therefore, *expressly* requires that all employees of the state be employed in accordance with the civil service statutes. Plaintiffs argue that the law also *impliedly* requires that particular functions of state government, including custodial services at Kent State, be performed exclusively by civil service employees. We do not agree.

The Board of Trustees of Kent State has been given broad statutory powers to operate the university in a successful and efficient manner. R. C. 3341.04 specifically provides that:

"The boards of trustees of Bowling Green state university and Kent state university, respectively, shall elect, fix the compensation of, and remove the president and such number of professors, teachers, and other employees as may be deemed necessary by said boards. The boards shall do all things necessary for the proper maintenance and successful and continuous operation of such universities."

In addition, R. C. 3345.021 provides in part:

"The board of trustees of any college or university, which receives any state funds in support thereof, shall have full power and authority on all matters relative to the administration of such college or university."

Further, the legislature of the state of Ohio has specifically recognized the practice whereby a governmental unit "contracts out" to an independent contractor, a func-

tion formerly performed by public employees. In pertinent part, R. C. 145.01(A), relating to the operation of the retirement system, reads:

" * * * 'Public employee' also means one who is a member of the retirement system who *continues to perform the same or similar duties under the direction of a contractor who has contracted to take over what before the date of such contract was a publicly operated function. The governmental unit with whom such contract has been made shall be deemed the employer for the purposes of administering Chapter 145. of the Revised Code.*" (Emphasis added.)

A final indication of legislative intent may be gleaned from Am. Sub. H. B. No. 86, which, as originally enacted, contained a section (Section 50) which would have prohibited "contracting out" for services in many situations. The last sentence of Section 50, however, provided that:

"This section shall not apply to institutions of higher education."

Section 50 was vetoed in its entirety by Governor Gilligan, who expressed the view that the bill would have impaired the ability of the state of Ohio to obtain essential services.[a] The bill retains importance as evidence of legislative intent. Consequently, we conclude that, contrary to plaintiffs' assertions, the present statutory law of Ohio impliedly permits rather than prohibits the contract in question.

There is no necessary conflict between the contract in question and the civil service laws of this state. This court has long recognized that contracting out the performance of a governmental service formerly performed by public employees does not violate the rights of civil service employees. Thus, in *City of Cleveland* v. *Lausche* (1943), 71 Ohio App. 273, a contract transferring the operation of the Cleveland zoo from the city to the Museum of Natural History was upheld in the face of the assertion that such a contract violated the rights of civil service employees. The con-

[a]Statement of Reasons for the Disapproval of Specific Items of Am. Sub. H. B. No. 86, June 29, 1973.

cept of contracting out a public service to an independent contractor also received court approval in *State, ex rel. Bartholomew, v. Witt* (1914), 3 Ohio App. 414, where the court stated at page 418:

"Under the law as we view it, it is possible that the board of education might provide for this janitorial service by an independent contract or by direct employment."

In summary, authority for the board of trustees of Kent State to enter into the contract under litigation may be found in both the statutory and case law of this jurisdiction.

The plaintiffs further contend, in support of the decision by the trial court, that recognition of the validity of contracts such as the one in question will thwart the very purpose of the civil service system. Again, we do not agree. The purpose of the civil service laws was succinctly stated in *Curtis* v. *State, ex rel. Morgan* (1923), 108 Ohio St. 292, 296:

"There is nothing complex or difficult to understand about civil service laws and rules. The fundamental purpose is to establish a merit system, whereby selections for appointments in certain branches of the public service may be made upon the basis of demonstrated relative fitness, without regard to political considerations. To carry out this purpose elaborate rules have been formulated, designed to facilitate its operation, but not to extend it beyond its legitimate limits."

An argument similar to that advanced by plaintiffs has also been rejected by the Court of Appeals of Maryland. In its decision, that court stated:

"The appellants would read into the action of the board a nefarious precedent whereby the protection afforded State employees under the Merit System could be materially and substantially eroded by the wholesale contracting out to private contractors work performed by State employees. We think that such fear is unwarranted because unless such action is done in good faith it is subject to challenge in court." *Ball* v. *Board of Trustees of State College* (1968), 251 Md. 685, 248 A. 2d 650, 654.

248

Any attempt to use "contracting out" as an indirect method to reinstate the spoils system would also be subject to challenge in the courts of this state. *See, e. g., State, ex rel. Miller,* v. *Witter* (1926), 114 Ohio St. 357.

For these reasons, we hold that, in the absence of proof of an intent to thwart the purposes of the civil service system, the board of trustees of a state university may lawfully contract to have an independent contractor perform services which might also be performed by civil service employees.

Plaintiffs introduced no evidence tending to establish that the board of trustees of Kent State entered into the contract in a bad faith attempt to circumvent the purposes of the civil service system.

In fact, the evidence adduced at trial tends to establish the good faith of the board. Aetna was awarded the contract on the basis of being the lowest of three bidders. Aetna did its own hiring, thus effectively eliminating the possibility of the operation of a "spoils system" by the University. Apparently, no civil service employee was ever displaced by an Aetna employee. Consequently, the contention that civil service employees were removed in bad faith is unavailable to plaintiffs appellees.

Because plaintiffs sought the injunction, they had the burden to prove a clear right thereto. *Spangler* v. *City of Cleveland* (1885), 43 Ohio St. 526. *See also, Schiff* v. *City of Columbus* (1967), 9 Ohio St. 2d 31; *Oberhaus* v. *Alexander* (1971), 28 Ohio App. 2d 60; *White* v. *Long* (1967), 12 Ohio App. 2d 136. Plaintiffs have not met this burden. The cause is accordingly remanded with instructions that the injunction be dissolved.

*Judgment reversed and cause remanded.*

Day and Corrigan, JJ., concur.