THE STATE, EX REL. DWYER, APPELLANT, *v.* CITY OF MIDDLETOWN ET AL., APPELLEES.

(No. CA87-10-139—Decided July 25, 1988.)

*Roger B. Turrell & Associates Co., L.P.A.,* and *Roger B. Turrell,* for appellant.

*Sheldon A. Strand,* law director, *Porter, Wright, Morris & Arthur* and *Paul R. Berninger,* for appellees.

*Per Curiam.* This is an appeal by relator-appellant, Russell L. Dwyer, from the judgment of the Court of Common Pleas of Butler County which dismissed his complaint for a writ of mandamus against the respondent-appellee, the city of Middletown.

The record before this court indicates that appellant, a career police officer, had been the chief of police for appellee for twelve years when, on the morning of June 15, 1987, he was summoned to the office of the then city manager William Burns and informed, in the presence of two police sergeants, that charges had been filed against him. He was immediately

escorted from the city building without being permitted to speak to his wife, who was then a police officer, or to pick up his coat from his office.

Following Burns' summary action against him, appellant sought and received an order of the Court of Common Pleas of Butler County which assured him of due process in connection with the anticipated hearing on the accusations made by Burns. However, prior to public disclosure of the substance of the charges and any hearing on them, appellant and appellee reached an agreement providing for appellant's resignation.[1] The agreement provided in part as follows:

"1. The Employee agrees to submit herewith his resignation from his position with the City as Chief of the Division of Police effective October 31, 1987 and the City agrees to withdraw any and all charges previously filed against the employee."

The agreement further provided, *inter alia*, that appellant would be relieved of duty *with pay* until the effective date of his resignation; that he would receive the sum of $10,000 for his expenses in connection with this matter; that he did not admit any wrongdoing; that he was to be allowed his accrued vacation pay and standard severance benefits; that he would be given his personal belongings still in appellee's possession; that appellee would release no information concerning the events leading to appellant's resignation except in response to a court order; that appellant's wife could continue her employment with appellee as a police officer and could transfer to any position for which she was qualified under R.C. Chapter 124; and that appellant would give appellee a release and would drop his pending lawsuit against Burns.

In accordance with the terms of the agreement, appellant tendered his resignation and appellee withdrew its charges against him. However, on or about September 25, 1987 (approximately thirty-five days before it was to become effective), appellant notified Burns of his intention to withdraw his resignation. That withdrawal letter notwithstanding, appellant was not restored to his position as chief of police.

Claiming appellee had breached the terms of its agreement with him, thereby entitling him to withdraw his resignation and be reinstated as chief of police, appellant, on October 2, 1987, filed a complaint for mandamus against Burns and appellee. That complaint sought a writ of mandamus ordering appellee to restore appellant to duty as chief of police together with full back pay. A hearing on appellant's complaint was scheduled for October 16, 1987, but was later changed to October 26, 1987.[2]

On October 26, 1987, a hearing on

---

[1] Appellant's brief denies the truth of the charges against him but concedes, if proven, they would constitute sufficient cause for his removal from his position as chief of police.

[2] On October 9, 1987, appellee filed a motion for summary judgment on appellant's complaint. That motion claimed that appellant failed to utilize his civil service remedies to nullify the agreement between himself and appellee after the latter allegedly breached its terms; that appellant had an adequate remedy at law; and that appellee had no clear legal duty to accept appellant's withdrawal of his resignation or to restore appellant to the position of chief of police. Based on these arguments, appellee claimed the common pleas court was without jurisdiction.

The record fails to make clear whether this motion was ever addressed by the court below although it was mentioned at the outset of the October 26, 1987 hearing on appellant's mandamus complaint.

appellant's complaint was held and testimony was received. Appellant presented six witnesses in order to show that appellee had breached paragraphs six and seven of its July 2 agreement with him.[3] However, after appellant rested, appellee's motion to dismiss was granted when the court found appellee had not breached, or at least had not materially breached, the agreement between them. This appeal followed.

In his brief before this court, appellant lists twelve assignments of error. Four of these assignments of error address the admission or exclusion of evidence at appellant's hearing while eight pertain to legal findings and rulings made by the court which led to its eventual decision to dismiss appellant's case.

For his first assignment of error, appellant alleges:

"The trial court erred to the prejudice of Relator-Appellant [Dwyer] in sustaining Respondent-Appellees' [City] Motion for Dismissal of the action."

As we read appellant's first assignment of error, it presents a twofold argument. First, if appellant proved appellee breached the terms of its July 2 agreement with him, he was entitled to mandamus relief. Second, the trial court's ruling notwithstanding, the record shows appellant proved appellee breached the agreement and therefore it should have issued the writ.

In order to be entitled to mandamus, a relator must demonstrate three things: (1) a clear legal right to the relief prayed for; (2) that the respondent is under a clear legal duty to perform the act requested; and (3) that the relator has no adequate remedy at law. *State, ex rel. Westchester Estates, Inc.,* v. *Bacon* (1980), 61 Ohio St. 2d 42, 15 O.O. 3d 53, 399 N.E. 2d 81, paragraph one of the syllabus; *Fluckinger* v. *Civil Service Comm.* (Nov. 30, 1983), Butler App. No. CA83-02-016, unreported; *State, ex rel. Bentley,* v. *Middletown City School Dist.* (1984), 20 Ohio App. 3d 223, 20 OBR 270, 485 N.E. 2d 768.

Appellant argues he is entitled to mandamus relief because of the Ohio Supreme Court's decision in *Williams* v. *State, ex rel. Gribben* (1933), 127 Ohio St. 398, 188 N.E. 654. Appellee, on the other hand, asserts appellant is not now and has never been entitled to mandamus because he had an adequate remedy at law (in the form of an R.C. 124.34 appeal to the city's civil service commission) when he decided appellee had breached the terms of its agreement with him.

In *Williams, supra,* two civil servants in Columbus' division of building regulations filed an action in mandamus to force the city to reinstate them to their former positions after they had executed written resignations. Evidence adduced during a hearing revealed the employees had executed blank resignations at the re-

---

[3] Paragraph six of the agreement provided:

"The City agrees that it will release no information concerning the subject controversy except in response to a court order. All documents in the City's possession have been prepared by its attorneys and shall be regarded as their work product. The City shall provide notice to the employee of the service of any such court order or application therefor."

Paragraph seven of the agreement provided:

"The City agrees that the employee's wife may continue her employment with its Division of Police and and [sic] has the right to transfer to any other position in the City for which she is qualified, all in accordance with Chapter 124 O.R.C."

quest of their superiors in connection with a planned reduction in force which was supposed to lead to their rehiring. However, following the acceptance of the resignations and the director of the department of public safety's submission of the former employees' names for reinstatement, the local civil service authority refused to rehire them and instead appointed others to take their places. After the employees applied to the civil service commission for reinstatement but were denied it, they filed a mandamus action claiming their resignations were procured through threats and coercion, contrary to representations made upon their execution and in violation of the city's civil service provisions.

In a unanimous decision, the Ohio Supreme Court held the former employees were entitled to be restored to their civil service positions because they had been wrongfully persuaded to tender their resignations and the city had refused to restore the former employees to their positions in a manner consistent with the letter and spirit of the city's civil service statutes.[4]

Appellant's argument based upon *Williams* that mandamus is the appropriate form of relief is strengthened by a 1985 Ohio Supreme Court decision. In *State, ex rel. Carter,* v. *Cleveland Bd. of Edn.* (1985), 17 Ohio St. 3d 105, 17 OBR 224, 477 N.E. 2d 1134, two classified civil servants, who happened to be bus drivers, were removed from their positions for tardiness, absenteeism, and insubordination. Both filed appeals of their removal but both reached agreements with the Cleveland Board of Education before their appeals were heard. The settlement agreements provided the bus drivers would submit their resignations on two *in futuro* conditions: (1) that the board of education would not oppose their claims for unemployment benefits; and (2) that they were found to be qualified to receive unemployment benefits. When the two bus drivers applied for but were denied unemployment compensation, they filed a mandamus action against the board, claiming it had violated the settlement agreement by opposing their claims for unemployment. By way of remedy, the bus drivers asked to be reinstated to their former positions because their conditional resignations were void once the board breached its agreement with them.

The Court of Appeals for Cuyahoga County dismissed the mandamus action. The Ohio Supreme Court thereupon reversed, holding that when the bus drivers settled their R.C. 124.34 civil service appeals prior to a hearing, they had no right of appeal and therefore no adequate remedy at law when the settlement agreement was later breached.

In light of *Williams, supra,* and *State, ex rel. Carter, supra,* we find appellee's adequate-remedy-at-law argument is not well-taken.[5] We therefore hold that a writ of mandamus is an ap-

---

[4] While the *Williams* decision went on to hold that the relators were not entitled as a part of their mandamus action to an award of compensation or salary for the period of their unlawful exclusion from office, in *Monaghan* v. *Richley* (1972), 32 Ohio St. 2d 190, 61 O.O. 2d 425, 291 N.E. 2d 462, the Ohio Supreme Court partially abandoned its decision in *Williams* and held an action in mandamus is maintainable by a reinstated public employee to recover compensation due him for any period of wrongful exclusion from employment provided the amount recoverable is established with certainty. See, also, *State, ex rel. Dean,* v. *Huddle* (1976), 45 Ohio St. 2d 234, 74 O.O. 2d 378, 344 N.E. 2d 138, which applied *Monaghan* and allowed a writ for back pay.

[5] Appellee's brief argues that the court below erred (harmlessly due to the court's

propriate remedy to obtain reinstatement where an appointing authority breaches the terms of an agreement it makes with a civil service employee which causes that employee to submit his resignation.

Appellant further argues in support of his first assignment of error that he proved appellee breached its agreement with him and, therefore, was entitled to a writ of mandamus ordering his reinstatement. We disagree.

Appellant's complaint alleged appellee's breach of paragraphs six and seven of its July 2 agreement entitled him to be reinstated. An examination of the settlement agreement reveals paragraph six of the agreement promised appellee "will release no information concerning the subject controversy except in response to a court order," while paragraph seven assured appellant's wife of continued employment and a right to transfer to any other position for which she is qualified.

While the trial court's pronouncements from the bench following appellant's hearing found paragraph six of the agreement had not been materially breached by appellee's submission of a minor female's deposition to the Butler County Children's Service Bureau, and glossed over testimony by a city commissioner that he told another city commission candidate that the charges against appellant pertained to sexual harassment, we find the trial court's refusal to recognize a breach of the agreement and to award appellant a writ of mandamus was proper.

We begin by noting that the subject controversy stems from an investigation of alleged wrongdoing by a public employee. This investigation led to the preparation of a report concerning that alleged wrongdoing. R.C. 149.43 defines a "public record" as, *inter alia,* any record kept by a public office, including the city. As we read R.C. 149.43(A), the report prepared concerning appellant's alleged wrongdoing is a public record. *Barton* v. *Shupe* (1988), 37 Ohio St. 3d 308, 309, 525 N.E. 2d 812, 813; *State, ex rel. Dispatch Printing Co.,* v. *Wells* (1985), 18 Ohio St. 3d 382, 18 OBR 437, 481 N.E. 2d 632; *State, ex rel. Cincinnati Post,* v. *Marsh* (1985), 26 Ohio Misc. 2d 5, 26 OBR 277, 498 N.E. 2d 508. Since it was a public record and since Ohio law favors disclosure of public records, *Barton, supra,* the agreement between appellant and appellee to refuse to disclose the substance of these materials was an illegal contractual provision. Since Ohio courts will not enforce illegal contract provisions but will leave the parties where it finds them, *Forsythe* v. *State* (1833), 6 Ohio 20, this court need not decide whether appellee breached paragraph six of its agreement with appellant because that paragraph, even if violated, was unenforceable. Consequently, we conclude appellant was not entitled to mandamus relief even if he proved a violation of paragraph six of his agreement with appellee. *Barton, supra.*

Because we find paragraph six of

---

decision) in holding a hearing on appellant's complaint because it lacked subject-matter jurisdiction. This argument is completely unfounded. R.C. 2731.02 specifically empowers a common pleas court to issue writs of mandamus. This initially flawed contention is compounded by appellee's additional admission that it made this subject-matter-jurisdiction argument in a motion for summary judgment. It is hornbook law that a court which lacks jurisdiction over the subject matter of a claim is without authority to grant summary judgment on the merits of that claim. *Kinney* v. *Ohio Dept. of Adm. Serv.* (1986), 30 Ohio App. 3d 123, 30 OBR 240, 507 N.E. 2d 402, paragraph one of the syllabus.

the agreement before us is illegal and unenforceable,[6] we conclude appellant's first assignment of error must be overruled.

Because appellant's first assignment of error is not well-taken, his third, fourth, fifth, seventh, eighth, ninth, tenth, eleventh, and twelfth assignments of error, all of which presuppose the availability of mandamus relief for a violation of paragraph six, are also not well-taken and must be overruled.

For his second assignment of error, appellant alleges:

"The trial court erred to the prejudice of Dwyer when it ignored persuasive legal precedent that Dwyer might withdraw his resignation."

In support of his second assignment of error, appellant argues the common pleas court erred in concluding he was not entitled to withdraw his resignation and be reinstated through mandamus when he learned appellee had allegedly breached the terms of its agreement with him. We agree generally with appellant's argument but find it not well-taken in this case.

Black's Law Dictionary (5 Ed. 1979) 1177, defines a "resignation" as a "[f]ormal renouncement or relinquishment" of office made with the intention of relinquishing the office and accompanied by "an act of relinquishment." This definition suggests an effective resignation requires two distinct components: first, an intention to resign, and, second, an act of relinquishment. Bearing this two-component test in mind, we have examined the facts before us.

On July 2, 1987, the same day he and appellee entered into an agreement settling the dispute between them, appellant tendered a resignation which was to be effective on October 31, 1987. While Burns immediately accepted this resignation, it is noteworthy that until October 31, appellant remained on appellee's payroll even though he no longer performed the duties of his office. Because appellant's July 2 resignation was not effective immediately, it was obviously not executed with an *in praesenti* intent to relinquish the office of chief of police, but with the intent of relinquishing that office in the future, *i.e.,* on October 31.[7] Consequently, while appellant may have performed an act of relinquishment by not reporting for work or attempting to perform his duties as chief of police after July 2, he expressed no intention to resign from that position before October 31. Therefore, appellant's resignation was not legally complete until October 31, 1987.

Our conclusion that appellant's resignation was not complete until October 31 is supported by *Babbitt* v. *Shade* (1938), 60 Ohio App. 100, 13 O.O. 447, 19 N.E. 2d 778, where the Court of Appeals for Franklin County held a civil service employee's resignation, which was to become effective in the future, could be withdrawn before its effective date even though it had been accepted by the appointing authority, which was opposed to the employee's continued occupancy of the office, and by *State, ex rel. Staley,* v. *Lakewood* (1934), 47 Ohio App. 519, 16 Ohio Law Abs. 722, 192 N.E. 180,

---

[6] We recognize, however, that to the extent its provisions are not illegal, the agreement between appellant and appellee was and is a valid and enforceable contract. *Suesskind* v. *Wilson* (1931), 124 Ohio St. 54, 176 N.E. 889, syllabus.

[7] Parenthetically, we also find appellant's resignation was not truly unconditional either, for it was predicated upon appellee's compliance with certain terms and conditions of their July 2 agreement.

where the Court of Appeals for Cuyahoga County reached a similar result. For these reasons, we conclude appellant had the power to withdraw his resignation before its effective date.

However, the fact that appellant had a power to withdraw his resignation does not automatically entitle him to a writ of mandamus ordering his reinstatement because in order to be entitled to that writ, the relator must demonstrate a clear legal right to it. *State, ex rel. Westchester Estates, Inc.,* v. *Bacon, supra.* Stated differently, simply because appellant possesses the power to withdraw his resignation does not, standing alone, entitle him to be reinstated as appellee's chief of police because appellant's right to be chief of police had already been altered by a contract with appellee. This contract, we conclude, shows he is clearly not entitled to be reinstated as appellee's chief of police as we shall now proceed to explain.

On July 2, 1987, appellant and appellee entered into a contract by which appellant voluntarily surrendered his right to be appellee's chief of police in consideration for certain promises by appellee. Consequently, only if that contract and its attendant promises are void is appellant entitled to be reinstated as appellee's chief of police.

In his first assignment of error, appellant unsuccessfully argued appellee breached the sixth paragraph of its agreement with him. An examination of appellant's brief demonstrates appellant's only remaining basis for setting aside this contract is appellee's sixth assignment of error, which alleges a breach of paragraph seven of the parties' agreement.

Appellant's sixth assignment of error alleges the trial court erred to his prejudice by not allowing him to testify concerning what could have happened to his wife if she had not resigned when she was transferred to patrol on July 3, 1987. Appellant argues this evidence was relevant because the transfer of his wife breached paragraph seven of its agreement. We disagree.

Appellant's wife was a civil service employee. As such, she enjoyed the rights and privileges guaranteed to every other civil servant by R.C. Chapter 124. Appellant testified paragraph seven of his agreement with appellee was intended to afford his wife protection from undue harassment or unnecessary risk, *inter alia,* by preventing her from being transferred to patrol duty. Accepting this premise, however, it is readily apparent to this court that the protection appellant sought to afford his wife was greater than that available to other civil service employees under R.C. 124.06. Since appellee's civil service employees are governed by R.C. Chapter 124, and R.C. 124.01 and 124.06 require that all R.C. Chapter 124 civil service employees be employed in accordance with the civil service laws of this state, *State, ex rel. Sigall,* v. *Aetna* (1976), 45 Ohio St. 2d 308, 313, 74 O.O. 2d 471, 473, 345 N.E. 2d 61, 64, we conclude it was unlawful for the city to promise or guarantee appellant's wife any special consideration respecting her work assignment vis-a-vis patrol or administrative duty. See *State, ex rel. Sigall,* v. *Aetna* (1974), 47 Ohio App. 2d 242, 1 O.O. 3d 310, 353 N.E. 2d 913, affirmed, *supra.* Accordingly, no cognizable claim of breach of paragraph seven of the parties' agreement could be predicated upon appellee's transfer of appellant's wife to patrol duty. Parenthetically, we would add that if appellee violated Mrs. Dwyer's R.C. Chapter 124 rights in connection with her transfer to patrol and her eventual resignation from the police department, she had a statutory avenue of appeal open to her irrespective of paragraph seven. Therefore,

that provision was essentially meaningless.

Because we find paragraph seven of appellant's July 2 agreement with appellee is unenforceable under R.C. Chapter 124, we conclude his sixth assignment of error is without merit and overrule it. Because appellant's sixth assignment of error, which is the only remaining assignment of error attacking his July 2 agreement, is without merit, we conclude that appellant's July 2 contract with appellee is valid and enforceable, and that appellant has failed to demonstrate a clear legal right to be reinstated as appellee's chief of police.[8] His second assignment of error must therefore be overruled insofar as it seeks a writ of mandamus.

Appellant having failed to persuade this court that the lower court's decision not to issue a writ of mandamus was in error, we affirm the judgment of that court.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, affirmed.

*Judgment affirmed.*

JONES, P.J., KOEHLER and YOUNG, JJ., concur.

(No. CA87-10-139—Decided August 29, 1988.)

ON RECONSIDERATION.

*Per Curiam.* This matter came on to be considered upon an application for reconsideration filed on August 11, 1988 pursuant to App. R. 26 by relator-appellant, Russell L. Dwyer, from the memorandum decision and judgment entry issued by this court in the above-captioned matter on July 25, 1988. Upon due consideration thereof, it is hereby ordered that said application is well-taken and this court hereby reconsiders its previously released decision.

Appellant asks us to reexamine our prior decision in light of the Ohio Supreme Court's decision in *State, ex rel. Natl. Broadcasting Co.,* v. *Cleveland* (1988), 38 Ohio St. 3d 79, 526 N.E. 2d 786 (hereinafter *"NBC"*). Having done as appellant requests, we find no error in our prior decision nor any basis upon which it should be modified.

In order to understand our decision, a brief history of this case is appropriate. Appellant filed a mandamus action in October 1987 in the Court of Common Pleas of Bulter County seeking a writ of mandamus that would order the city of Middletown to reinstate appellant as the city's chief of police. Appellant alleged that because the city had breached an agreement with him not to disclose certain allegations made against him if he would voluntarily resign, he should be reinstated. The court of common pleas refused to issue the writ and appellant appealed to this court.

While appellant's action was pending before this court, the Ohio Supreme Court, on July 6, 1988, ruled in *Barton* v. *Shupe* (1988), 37 Ohio St. 3d 508, 525 N.E. 2d 812 (an action in which appellant was not a party), that the investigatory materials leading to appellant's resignation which were in the possession of the city of Middletown were public records and could

---

[8] Appellant does not claim that the city failed to withdraw the charges filed against him, that it failed to pay his salary until October 31, 1987, or that it failed to pay him $10,000 for expenses. Consequently, he is bound by his contract and does not have the right to rescind same and withdraw his resignation.

not be withheld from public scrutiny under the trial preparation exception to R.C. 149.43. Consequently, the Supreme Court issued a writ of mandamus ordering that the materials be made public.

On July 25, 1988, this court announced its decision on appellant's mandamus appeal. We found the provisions of appellant's contract on which his breach of contract action was predicated were illegal and therefore unenforceable, citing *Barton* v. *Shupe, supra,* as supporting authority.

On July 27, 1988, the Ohio Supreme Court announced its decision in *NBC.* It ruled, *inter alia,* that a governmental body which refuses to release materials has the burden of showing those materials are excepted from disclosure under R.C. 149.43 and that the court before whom such a nondisclosure claim is made must independently examine the materials and then rule on the applicability of the claimed exception(s).

Appellant now argues that this court should apply *NBC* to his case by examining the materials in issue to see whether they should be exempted from public disclosure. There are two problems with this position. First, the materials appellant wishes us to examine were not presented to the court of common pleas below and are not in the record before us. Second, it appears to this court that the Ohio Supreme Court has already examined the materials in question and ruled on their nondisclosure under R.C. 149.43 in *Barton* v. *Shupe, supra.*

Appellant further argues that in concert with any examination of the documents here in issue, appellee, pursuant to its contract with appellant, is required to assert the existence of an exception to nondisclosure under R.C. 149.43. This contention notwithstanding, it appears to us that this is exactly what appellee did in unsuccessfully defending against disclosure in *Barton* v. *Shupe, supra.*

Finally, we find no discussion in appellant's application for reconsideration of any basis for exempting the documents in question from disclosure under R.C. 149.43. We have already ruled, and we adhere to that ruling here, that appellant and appellee cannot contract in derogation of Ohio law, specifically R.C. 149.43. Thus, claims grounded solely on appellant's contract with appellee will not defeat the disclosure required by R.C. 149.43.

For the foregoing reasons, we find appellant's argument unpersuasive and it is hereby overruled. The July 25, 1988 decision and judgment entry of this court in the above-captioned matter is reaffirmed and stands as written.

*Judgment reaffirmed.*

JONES, P.J., KOEHLER and YOUNG, JJ., concur.