DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Phillip Dore, appeals from the judgment of the Lorain County Court of Common Pleas which affirmed the decision of the Lorain Civil Service Commission terminating Appellant as Lorain City Fire Chief. We affirm.
 {¶ 2} Appellant was appointed as Lorain City Fire Chief in June 1999. On April 25, 2002, Appellee, Craig Miller, Lorain City's Safety/Service Director, entered into a "Memorandum of Understanding" proposing an amendment to the current Fire Department collective bargaining agreement ("CBA"). Pursuant to the proposed amendment, called Article 52, Appellant could resign from his position as Fire Chief, begin receiving his pension, and then be rehired to the exact position from which he resigned.
 {¶ 3} Days after this memorandum was signed, Appellant sent a letter to Lorain Mayor Craig Foltin resigning and retiring as Fire Chief effective May 17, 2002. Appellant also filed a formal "Notice of Intent to be Rehired" as required under the proposed Article 52. Both Mayor Foltin and Appellee Miller agreed that they understood that Appellant would retire and subsequently be rehired to his position as Fire Chief. On his date of retirement, Appellant signed the Ohio Police and Fire Pension Fund Separation Worksheet in order to begin collecting his pension. Appellant was immediately removed from the City's payroll, and began receiving his pension. Anthony M. Cuevas assumed the responsibility as Acting Fire Chief following Appellant's retirement.
 {¶ 4} Proposed Article 52, however, was never approved and adopted as a part of the CBA. After learning that Article 52 was not adopted, Appellant was advised by the Ohio Police and Fire Pension Fund that he could rescind his resignation and retirement. Appellant opted not to do so, and continues receiving his pension to this day. Nonetheless, Appellant did submit a request to Mayor Foltin to withdraw his previous resignation and retirement. Mayor Foltin and Appellee Miller agreed to rescind the prior resignation, re-employing him as Lorain City Fire Chief effective June 10, 2002.
 {¶ 5} On January 29, 2003, the Law Director provided the Civil Service Commission with a legal opinion explaining that Appellant's resignation and retirement had not, in fact, been conditional. As R.C. 742.37(C)(2) required Appellant to voluntarily separate from service in order to receive his pension, the Director indicated that Appellant's retirement was a voluntary separation from service. Appellant's resignation, therefore, created a vacancy in the position of Fire Chief to be filled in accordance with civil service laws. The Director also explained that R.C. 124.50 rendered Mayor Foltin without authority to rehire Appellant as Fire Chief — instead Appellant could only be rehired through a certain statutory procedure which allowed him only to serve in the rank of firefighter.
 {¶ 6} Mayor Foltin requested a second opinion on this issue from the Law Director, who reiterated his original opinion. The Law Director indicated to Mayor Foltin that he must certify the vacancy and fill it according to statutory civil service procedures. Following this second opinion, Mayor Foltin sent a letter to Appellant, indicating that he would no longer hold the position of Fire Chief effective March 14, 2003.
 {¶ 7} On March 11, 2003, Appellant filed a civil suit against the Mayor, Appellee Miller, and others[1] seeking to prevent them from taking any action to remove him as Fire Chief. The court granted a preliminary injunction the same day. Then, on April 1, 2003, the Civil Service Commission held a hearing to determine whether the termination of Appellant as Fire Chief was proper. While both Mayor Foltin and Appellee Miller testified that they wanted Appellant to continue as Fire Chief, the Commission found that Appellant's removal from office was proper. Due to the injunction in place in Appellant's civil suit, however, no action was taken to fill the vacancy. Appellant appealed the decision of the Commission to the common pleas court, which consolidated Appellant's original proceeding and the administrative appeal.
 {¶ 8} The trial court issued a decision on December 8, 2003, affirming the decision of the Commission. The court also vacated "the restraining order" which was granted earlier. Following a request for Civ.R. 54(B) language in order to file an appeal, the court reiterated that it had, in fact, addressed all issues before it, and vacated the civil injunction, so that Civ.R. 54(B) language was not actually necessary. Appellant filed a timely appeal, requesting the trial court to stay enforcement of its judgment to remove him from office pending the outcome of the appeal. The trial court granted that stay. Appellant now raises four assignments of error for our review. For ease of review we will discuss the first three assignments of error together.
 ASSIGNMENT OF ERROR I
"The Trial Court erred in upholding the decision of the Lorain Civil Service Commission `that the removal of [Appellant] as Lorain City Fire Chief effective March 14, 2003 was proper' because there was no evidence presented before that Commission that [Appellant] had violated the standard of `good behavior and efficient service' required by [R.C. 124.34] and the appointing authority had not instituted a proceeding in quo warranto to remove [Appellant]."
 ASSIGNMENT OF ERROR II
"The Trial Court erred in upholding the decision of the Lorain Civil Service Commission `that the removal of [Appellant] as Lorain City Fire Chief effective March 14, 2003 was proper' because he was not lawfully removed by his appointing authority."
 ASSIGNMENT OF ERROR III
"The Trial Court erred in upholding the decision of the Lorain Civil Service Commission `that the removal of [Appellant] as Lorain City Fire Chief effective March 14, 2003 was proper' because any supposed resignation letter either did not take effect or was lawfully rescinded."
 {¶ 9} In his first three assignments of error, Appellant alleges that the trial court erred in affirming the decision of the Commission because it lacked jurisdiction and the decision was not supported by the evidence. Appellant first argues that the trial court lacked jurisdiction to hear the case because he may only be removed from the office pursuant to a quo warranto proceeding. Further, Appellant urges us to find that (1) he effectively rescinded his prior resignation, (2) the only way he may be removed is upon evidence that he violated a standard of "good behavior and efficient service[,]" and (3) his termination was ineffective because Mayor Foltin was not a proper appointing authority and had no authority to terminate his position as Fire Chief. We find Appellant's contentions meritless.
 A. Jurisdiction {¶ 10} We first note that a quo warranto proceeding is improper where there is "a plain and adequate remedy in the ordinary course of the law." State ex rel. Fogle v. Carlisle,99 Ohio St.3d 46, 2003 — Ohio-2460, at ¶ 9. Where an individual has an adequate remedy, such as a civil service appeal pursuant to R.C. 2506.01, quo warranto will not lie. Id. The trial court, therefore, did have jurisdiction to entertain Appellant's appeal from the original civil service determination.
 B. Standard of Review {¶ 11} The Ohio Supreme Court has directed the correct standard of review in an R.C. 2506 appeal:
"The common pleas court considers the `whole record,' including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." Henley v. Youngstown Bd. of Zoning Appeals (2000),90 Ohio St.3d 142, 147.
On appeal, our standard of review is even more limited in scope: we must affirm the decision of the common pleas court unless we find, "as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence." Smith v.Granville Twp. Bd. of Trustees (1998), 81 Ohio St.3d 608, 613. Our review on questions of law, however, is plenary. Czubaj v.Tallmadge, 9th Dist. No. 21389, 2003-Ohio-5466, at ¶ 11; McGeev. Ohio State Bd. of Psychology (1993), 82 Ohio App.3d 301, 305.
 C. Did Appellant properly rescind his resignation? {¶ 12} Appellant first insists that he properly rescinded his resignation and never, in fact, retired. An act of resignation requires both the intent to resign and an act of relinquishment.State ex rel. Dwyer v. Middletown (1988), 52 Ohio App.3d 87,92. Intent to resign may be inferred from the sending of a letter of resignation. See id. An employee who has not actually relinquished his position may rescind his resignation at any time prior to the effective date of that resignation as long as the employer has not yet formally accepted the resignation. Davis v.Marion Cty. Engineer (1991), 60 Ohio St.3d 53, 55. However, after relinquishing a position, one may not rescind his resignation unless no rights have intervened and the appointing authority consents to that rescission. 15 Ohio Jurisprudence 3d (1995), Civil Servants, Section 187.
 {¶ 13} The facts in the case show that Appellant voluntarily resigned from his position. His intent to resign is evidenced by his unconditional letter of resignation, followed by his actual relinquishment of his position on the stated date. Appellant was officially on non-payroll status for twenty-four days, filled out the necessary paperwork in order to begin receiving his pension, and, in fact, began receiving his retirement benefits. Resignation is defined in Ohio Administrative Code Section123:1-47-01(A)(78) as "a voluntary separation from state service by the employee." According to R.C. 742.37(C)(2), only one who "voluntarily resigns" from his employment with the fire department may receive an annual pension. As Appellant continues to receive his pension, one must reach the inevitable conclusion that Appellant voluntarily resigned from his service with the fire department.
 {¶ 14} Appellant's argument that his resignation remained conditioned upon the approval of Article 52 is likewise not supported by the record. Both Mayor Foltin and Appellee Miller testified that Appellant's original resignation was conditioned upon his reinstatement per Article 52; Appellant filed the required form regarding his intent to be reinstated; Appellant also opted not to collect payment for his outstanding sick and vacation time per the mandates of the proposed Article. However, when Article 52 did not get approved, Appellant was notified that, given the conditional nature of his original resignation, he could rescind that resignation with the Ohio Police and Fire Pension Board and return to his former position. Nevertheless, Appellant opted not to rescind his resignation, and continues receiving his pension to this day. Appellant's choice not to rescind his resignation and his continued receipt of retirement benefits statutorily leads to the conclusion that he voluntarily separated from service. See R.C. 742.37(C)(2). Some competent and credible evidence in the record supports that Appellant resigned from his office as Fire Chief on May 17, 2002.
 D. Could Appellant lawfully be reinstated as Fire Chief? {¶ 15} Based on Appellant's valid resignation, the question remains whether, absent Article 52, he may be reinstated to his position as Fire Chief. This question is easily answered:
"Any person holding an office or position under the classified service in a fire department * * * who resigns therefrom, may be reinstated to the rank of firefighter * * * upon the filing of a written application for reinstatement [within one year of resignation] * * * and upon passing a physical examination disclosing that the person is physically fit to perform the duties of the office of firefighter or police officer[.] * * * Any person reinstated pursuant to the authority of this paragraph shall not receive credit for seniority earned prior to resignation and reinstatement, and shall not be entitled to reinstatement to a position above the rank of regular firefighter * * * regardless of the position the person may have held at the time of resignation." R.C. 124.50.
 {¶ 16} R.C. 124.50 leaves no doubt that Appellant could not be lawfully reinstated to any position above that of firefighter following his voluntary resignation. The consent of Mayor Foltin and Appellee Miller is irrelevant: the Mayor and Safety Director simply cannot approve an act that is unlawful per Ohio statute. The statute in effect disqualified Appellant from returning to that office. The record is clear that Appellant did not follow the statutory procedure to be reinstated as a firefighter, and was reinstated to a position inconsistent with the mandates of the statute. Appellant, therefore, could not have lawfully been reinstated to any position other than that of firefighter.
 E. Could Appellant be removed from office? {¶ 17} Appellant alleges that he may only be removed from office for just cause under R.C. 124.34. Appellant, however, mischaracterizes the issue at hand Appellant's resignation and retirement in effect disqualify him from being reinstated to any position other than that of firefighter under R.C. 124.50. "[A] clear cut distinction exists between a case involving the removal of a public officer as contemplated by the Constitution and a case in which an official becomes disqualified by a provision of law from continuing in the office he holds." State ex rel. Bodav. Brown (1952), 157 Ohio St. 368, 373. In this case, Appellant was disqualified under R.C. 124.50 from holding the office of fire chief due to his resignation and retirement. He may not, therefore, legally continue to hold the position.
 F. Is the Mayor a proper appointing authority? {¶ 18} Appellant further argues that Mayor Foltin, who sent the letter officially terminating Appellant's employment as Fire Chief, was not a proper appointing authority and could not properly terminate him from office. Regardless of the fact that the predecessor of Mayor Foltin actually appointed Appellant to his position as Fire Chief, Appellant still claims that the mayor may not appoint him to or terminate him from office. Appellant opines that only Appellee Miller, the director of public safety, has the power to terminate him from his position.
 {¶ 19} Only an appointing authority may remove the Fire Chief from his office. See R.C. 124.34(C). The director of public safety in a city acts "[u]nder the direction of the mayor[.]" R.C. 737.02. He serves as the executive head of the fire department, and has "all powers and duties connected with and incident to the appointment * * * of such departments except as otherwise provided by law." Id. Accordingly, unless the law provides otherwise, it would appear that the director of public safety has the power to appoint and remove the Fire Chief. However, R.C. 733.03 states that the Mayor of a city "may appoint and remove * * * the heads of the subdepartments of public service and public safety[.]" As the Fire Department is undeniably a subdepartment of public service and public safety, the mayor has the right to remove its head — the Fire Chief. Accordingly, Mayor Foltin could properly remove Appellant from office.
 F. Conclusion {¶ 20} Appellant apparently served well as Fire Chief. Both Mayor Foltin and Appellee Miller insisted that Appellant served his city well during his tenure, and both fervently wished that Appellant could continue with his position as Fire Chief. Regardless of Appellant's record of service, and his original intent to be reinstated under Article 52, the facts and law in this case lead to the conclusion that Appellant was properly removed from his office as Fire Chief.
 {¶ 21} Appellant's resignation was never properly rescinded. He voluntarily resigned from service and began receiving his pension. He opted not to rescind his resignation with the Ohio Police and Fire Pension Board after notice that Article 52 had not been approved. Nonetheless, Mayor Foltin and Appellee Miller unlawfully consented to allowing Appellant to return to his position as Fire Chief. Appellant's resignation and retirement disqualified him from being reinstated to any position other than firefighter under R.C. 124.50. Mayor Foltin, an appointing authority for the Fire Chief, properly removed Appellant from office. Competent and credible evidence supports the findings of the Lorain Civil Service Commission. Accordingly, Appellant's first three assignments of error are overruled.
 ASSIGNMENT OF ERROR IV
"The Trial Court erred when it failed to issue Findings of Fact and Conclusions of Law notwithstanding [A]ppellant's Motion requesting the Trial Court to do so."
 {¶ 22} In his final assignment of error, Appellant alleges that the trial court erred by failing to issue findings of fact and conclusions of law pursuant to his request under Civ.R. 52. We find Appellant's argument meritless.
 {¶ 23} When a party requests findings of fact and conclusions of law pursuant to Civ.R. 52, the judge must make those findings only "when questions of fact are tried by the court without a jury[.]" In this case, the trial court simply reviewed the record from Appellant's administrative appeal and did not try any questions of fact. Instead, all questions of fact had been tried below by the Lorain Civil Service Commission. As such, the trial court judge was not required to make findings of fact and conclusions of law pursuant to Civ.R. 52.
 {¶ 24} Appellant insists that, while Civ.R. 52 may not mandate the making of findings of fact and conclusions of law in the administrative appeal, the rule does require the judge to make those findings in Appellant's injunctive action. In his injunctive action, Appellant requested (1) a temporary, preliminary, and permanent injunction to prevent anyone from declaring a vacancy in or attempting to fill the position of Fire Chief, and (2) a declaratory judgment that Appellant properly remained as Fire Chief and that no vacancy ever existed in that position. After receiving consent of all parties, the trial court granted a preliminary injunction to maintain the status quo, and not declare a vacancy in the Fire Chief position, "until the Lorain Civil Service Commission has rendered a decision in this case, and pending further Order and determination of this Court."
 {¶ 25} Following the issuance of the preliminary injunction, Appellant requested consolidation of the original action and the administrative appeal, stating that "[t]he issues in the two cases could scarcely be more material one to the other. * * * [A]ll of the parties face the potential of two directly contrary decisions should the cases not be joined at this time." The court granted the motion to consolidate under Loc.R. 4 and Civ.R. 42 because it found "there to be sufficient commonality of issues to warrant consolidation[.]" After the cases were consolidated, they effectively became one case and proceeded under one case number. The court requested both parties to brief the merits of the case, and neither party requested an evidentiary hearing in this matter. The court merely allowed the requested Loc.R. 16(B) oral argument regarding the briefs and administrative hearing, and did not admit any new evidence.
 {¶ 26} As the court simply proceeded on the administrative transcript and briefs without hearing new evidence in this case, and neither party objected to this act, the court was, again, not acting as fact finder. The court recognized that the determination of the administrative appeal was dispositive of both cases, consolidated them, and properly deferred to the findings of fact made by the Lorain Civil Service Commission. No additional evidence was needed in order to determine the original action: if the court upheld the Commission's determination that Appellant was properly terminated as Fire Chief, then that necessarily determined that Appellant was not the current Fire Chief (his request for declaratory judgment) and that an injunction preventing a vacancy in that position was improper. Because the court was not acting as the finder of fact, it need not have issued findings of fact and conclusions of law under Civ.R. 52. Accordingly, Appellant's fourth assignment of error is overruled.
 {¶ 27} We overrule Appellant's assignments of error and affirm the decision of the Lorain County Court of Common Pleas.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Batchelder, J., concurs.
[1] Appellant also sued the City of Lorain, the City of Lorain Civil Service Commission, and Civil Service Comissioners Donald Gleisner, Ribogerto Reveron, and Kenneth Provenza.