**Tom HAMMON, Plaintiff–Appellant,**

v.

**DHL AIRWAYS, INC., Defendant–Appellee.**

No. 97–4054.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 18, 1998.

Decided Jan. 12, 1999.

---

**2.** The jury awarded $86,650 in past damages and $413,350 in future damages.

444

David G. Torchia (argued and briefed), Tobias, Kraus & Torchia, Cincinnati, OH, for Plaintiff–Appellant.

Linda L. Woeber (argued and briefed), Montgomery, Rennie & Jonson, Cincinnati, OH, for Defendant–Appellee.

Before: SUHRHEINRICH, CLAY, and OAKES,* Circuit Judges.

## OPINION

CLAY, Circuit Judge.

Plaintiff, Tom Hammon, appeals from the order granting summary judgment to DHL Airways, Inc. ("DHL") on his claims brought under the Americans with Disabilities Act, ("ADA"), 42 U.S.C. §§ 12101–12213, the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601–2654, and the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461.

---

* The Honorable James L. Oakes, Senior Circuit Judge of the United States Court of Appeals for the Second Circuit, sitting by designation.

■ The district court granted summary judgment in favor of DHL on Plaintiff's ADA and FMLA claims because the court determined that Plaintiff "constructively resigned" before he requested relief under the statutes, and therefore he had no right to invoke their protections. Specifically, the court ruled that Plaintiff's ADA and FMLA claims were barred because an employee who voluntarily resigns before he requests relief under the ADA or the FMLA cannot make a claim against his employer under these statutes, and "constructive resignation" is a form of voluntary resignation. *See State ex rel. Waldman v. Burke,* 152 Ohio St. 213, 88 N.E.2d 578, 579 (Ohio 1949) (describing constructive resignation as a form of voluntary resignation). The district court dismissed Plaintiff's ERISA claim because Plaintiff failed to prove that his employer encouraged him to resign or accepted his resignation in order to prevent him from claiming an employee benefit.[1]

Plaintiff argues on appeal that he presented enough evidence at summary judgment to create genuine issues of material fact about whether he "constructively resigned" and therefore the district court erred in concluding that his resignation was a voluntary resignation.

We agree with the district court's decision that Plaintiff voluntarily resigned from his position with DHL. However, we find that the district court erred when it determined that Plaintiff's resignation scenario was a "constructive resignation." Rather, Plaintiff's resignation should have been recognized under the line of voluntary resignation cases describing "effective resignation." *State ex. rel. Dwyer v. City of Middletown,* 52 Ohio App.3d 87, 557 N.E.2d 788, 791–93 (Ohio Ct.App.1988).

■ However, because "effective resignation" and "constructive resignation" are both forms of voluntary resignation, the district court's error in analysis does not materially affect our decision. Although we reject the district court's conclusion that Plaintiff "constructively resigned" from DHL and find that Plaintiff "effectively resigned" from his position, this does not alter our holding that the district court did not err in granting DHL summary judgment. *See Union CATV v. City of Sturgis,* 107 F.3d 434, 442 (6th Cir.1997) (finding that an appellate court may affirm a district court where the district court reached the right result for the wrong reason).

## I. BACKGROUND

Plaintiff was a pilot at DHL Airlines from 1989 until 1993. Plaintiff was hired as a "First Officer for Metro Aircraft" and became "Captain of Lear Jets" and "Captain of Metros."[2] DHL reported no significant problems with Plaintiff's performance until the summer of 1993. DHL ceased flying Metro aircrafts in 1993 and offered all of its Metro pilots flight training on Boeing 727s or DC–8s. Plaintiff chose to begin training on the Boeing 727.

Plaintiff attended and completed ground school in September of 1993. Plaintiff's flight simulator training began on September 29, 1993. Plaintiff informed DHL on September 30, 1993, that he would be unable to finish the training because he had contracted pneumonia. After verifying his illness, DHL allowed Plaintiff, under the FMLA, to take a leave of absence until November 6, 1993.

Plaintiff returned to work in November of 1993 and was placed in a more senior flight training class consisting of DHL flight in-

---

1. ERISA allows an employee to sue his employer when his employer deprives him of a benefit generally offered to employees. The statute also allows a former employee to sue his former employer when the employer acted to deprive him of a pension or retirement benefit. *See Humphreys v. Bellaire Corp.,* 966 F.2d 1037, 1043 (6th Cir.1992). Plaintiff here does not invoke his right to sue under ERISA as a former employee; rather, he claims that DHL encouraged him to resign to prevent him from claiming his rights while he was an employee. *See, e.g., Hinton v.*

*Pacific Enterprises,* 5 F.3d 391 (9th Cir.1993) (describing a case where plaintiff alleged that she was coerced into resigning and her employer acted to prevent her from claiming an ERISA benefit).

2. The facts in this case are for the most part undisputed. The opinion notes those instances where the parties disagree over whether certain events occurred.

structors.[3] A flight instructor named Mark Mahoney screamed at Plaintiff on November 12, 1993, because Plaintiff failed to respond properly to a fire alarm test drill. Plaintiff's mistake caused him to crash the simulated airplane. Plaintiff claims that he became anxious and disheartened after the incident because Mahoney spoke to him harshly and because Mahoney complained about him to his supervisor, Jim Pebler.

Plaintiff's anxiety and nervousness increased during the week following Mahoney's reprimand. Plaintiff told Pebler on November 20, 1993, that he was going to drop out of the training program because he was "going backwards" in training. Plaintiff also told Pebler that he was thinking about resigning from DHL entirely. Plaintiff stated that he might be destined to be a small plane pilot and that he thought he might never be able to fly the Boeing 727 aircraft. Pebler attempted to dissuade Plaintiff from turning in his resignation. Pebler told Plaintiff to go home, advised him to think things over, and counseled him to talk with Boeing Chief Pilot, Joe Sarsfield, the next day. Pebler mentioned to Plaintiff that he ought to consider taking a leave of absence.

On November 22, 1993, Plaintiff met with Sarsfield to talk about his problems. Sarsfield asked Plaintiff why Plaintiff believed he was regressing in flight training, and offered to change Plaintiff's flight instructor. Plaintiff alleges that Sarsfield told him that his only option was to take his last two training sections and then go on a "check ride" flight in the Boeing 727.[4] Plaintiff also alleges that Sarsfield told him that he was an employee the company wanted to keep. Plaintiff reasserted his intention to resign, explaining that things were not working out. Sarsfield told Plaintiff to go home, and advised Plaintiff that he would not submit Plaintiff's resignation to the Chief Systems Pilot, Jim Driscoll, for twenty-four hours. Sarsfield told Plaintiff that if Plaintiff did not call him by noon the next day, he would call the next supervisor and begin processing Plaintiff's resignation. Plaintiff failed to call Sarsfield for four days. During this period, Plaintiff did not rejoin the flight training class, he did not schedule his check ride, and he did not call DHL to find out if he was being assigned a new flight instructor.

Plaintiff met with Dr. Kreyling, an internist who examines flight pilots for their Federal Aviation Association ("FAA") certification, on November 26, 1993. Dr. Kreyling noted that Plaintiff was extremely nervous and had high blood pressure; he suspected that Plaintiff's emotional problems were causing his physical condition. Dr. Kreyling did not specifically diagnosis Plaintiff, but he told Sarsfield that Plaintiff was too anxious to fly, that Plaintiff should be checked out by an FAA physician, and that it would take Plaintiff more than a month to recover. The doctor testified that either Sarsfield or Plaintiff told him that Plaintiff no longer worked for DHL.

Plaintiff called Sarsfield on Friday, November 26, 1996. Sarsfield returned Plaintiff's phone call the following Monday, November 29, 1998. Plaintiff informed Sarsfield that he had met with Dr. Kreyling and he summarized the doctor's findings. Sarsfield told Plaintiff that, since he had resigned, Plaintiff's condition was immaterial to DHL at this point. Sarsfield advised Plaintiff to write a letter requesting reinstatement.

Dr. Kreyling referred Plaintiff to Dr. Muldering for additional counseling, and Plaintiff commenced his treatment on December 9, 1993. On December 21, 1993, Plaintiff wrote a letter to DHL to request reconsideration of his "verbal resignation under duress" and to "apply for reinstatement at a later date."[5] DHL refused to reinstate

---

3. Plaintiff's original flight training class was composed of pilots who possessed the same or similar skill level as Plaintiff.

4. DHL pilots take "check ride" flights at the completion of their simulator training to insure that they are capable of actually handling a real aircraft.

5. In depositions, Plaintiff contends that he used the term "verbal resignation" because DHL insisted that he had resigned. He also claims he used the term "resignation under duress" to refer to stress he experienced during flight training.

Plaintiff. Plaintiff continued to see Dr. Muldering until May of 1996.

Plaintiff filed suit against DHL under the ADA, the FMLA and ERISA in the United States District Court for the Southern District of Ohio on November 22, 1995. DHL filed a motion for summary judgment on April 1, 1997. The district court granted DHL's motion for summary judgment on August 13, 1997, and Plaintiff timely filed the current appeal.

## II. DISCUSSION

This Court reviews a district court's order granting summary judgment *de novo*. *See Berlin v. Michigan Bell Tel. Co.*, 858 F.2d 1154, 1161 (6th Cir.1988). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party moving for summary judgment must establish that there are no genuine issues of material fact and that the evidence, when read in the light most favorable to the nonmoving party, compels a ruling in favor of the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

▪ At summary judgment, the moving party may show that he is entitled to a ruling in his favor by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To prevent summary judgment, the nonmoving party must have created a genuine issue of material fact by offering enough evidence

"such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the facts in a case are undisputed, one of the parties is entitled to judgment as a matter of law. *See Atlantic Richfield Co. v. Monarch Leasing Co.*, 84 F.3d 204, 206 (6th Cir.1996).

### A. Effective Resignation vs. Constructive Resignation

▪ When an employee voluntarily resigns, he cannot claim that he suffered an adverse employment decision under the ADA or the FMLA.[6] *See, e.g., Keever v. City of Middletown*, 145 F.3d 809, 813 (6th Cir.1998) (affirming the lower court's decision that an employee who voluntarily resigned did not suffer an adverse employment decision under the ADA). Therefore, this Court must determine whether Plaintiff voluntarily resigned before we may address Plaintiff's ADA, FMLA, and ERISA claims.[7]

▪ The ADA, the FMLA and ERISA do not define the term resignation. This Court has held that when an employment law statute is silent as to a term's meaning, courts should identify the disputed term's meaning as it is defined under common law principles of agency and the master-servant relationship and incorporate that definition of the term into the statute. *See Johnson v. City of Saline*, 151 F.3d 564, 568 (6th Cir.1998) (citing *Nationwide Mut. Insur. Co. v. Darden*, 503 U.S. 318, 319, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992), wherein the term "employee" under ERISA was analyzed). In Ohio, definitions of employment relationships are defined using principles in contract and agency law. *See generally, Henkel v. Educational Research Council*, 45 Ohio St.2d 249, 344 N.E.2d 118 (Ohio 1976) (describing

---

6. We recognize that an employee's voluntary resignation is not truly voluntary when his employer has encouraged him to resign in order to prevent him from claiming an employee benefit. *See e.g., Stenke v. Quanex Corp.*, 759 F.Supp. 1244 (E.D.Mich.1991) (recognizing that an employee may bring an equitable estoppel claim against an employer for a denial of ERISA benefits when the employer materially misrepresents a benefit program in order to persuade the employee to voluntarily resign).

7. The success of Plaintiff's ERISA claim also turns on whether and when he voluntarily resigned because he claims DHL violated ERISA because DHL encouraged him to resign or accepted his resignation in order to prevent him from claiming FMLA and ADA benefits he was eligible for while he was an employee.

state cases interpreting informal employment agreements under principles of contract law).

■ Ohio common law outlines two kinds of voluntary resignation: "constructive resignation" and "effective resignation." *See Rieke v. Hogan,* 138 Ohio St. 27, 32 N.E.2d 9, 10 (Ohio 1941). An employee can "constructively resign" in two ways: (1) by failing to comply with his employer's written request requiring him to take a certain action, *see Waldman,* 88 N.E.2d at 578–79, or (2) by constructively abandoning his position, that is, by failing to report to work for a substantial period of time. *See Rieke,* 32 N.E.2d at 10 (noting that the state court requires "cogent proof to establish [an employee's] abandonment" of his position).

■ The second form of voluntary resignation is "effective resignation." *State ex. rel. Dwyer v. City of Middletown,* 52 Ohio App.3d 87, 557 N.E.2d 788, 793 (Ohio Ct.App. 1988); *see also, State Employment Relations Bd. v. Ohio State Univ.,* 36 Ohio App.3d 1, 520 N.E.2d 597, 599 (Ohio Ct.App.1987) (describing effective resignation without specific use of the term). An employee must take two steps in order to "effectively resign." *See State Employment Relations Bd.,* 520 N.E.2d at 599. First, the employee must express an "intention to resign." *See id.* Second, the employee must take some action to demonstrate that he is relinquishing his position. *See id.* The employee need not take the two actions at the same time; however, he must take both actions before an "effective resignation" is complete. *See id; see also Dwyer,* 557 N.E.2d at 793 (finding an effective resignation where substantial time elapsed between the time the employee expressed an intention to resign and the time

when the employee acted to relinquish his position).

■ The district court erred when it found that Plaintiff "constructively resigned." DHL offered no proof to show that Plaintiff had abandoned his job, or that DHL had given him written notice that his failure to do something would be interpreted as an act of resignation. *See e.g., Waldman,* 88 N.E.2d at 578–79 (describing written notification); *Rieke,* 32 N.E.2d at 10 (describing abandonment in fact). The district court erroneously determined that Sarsfield's conversation with Plaintiff on November 22, 1993, gave Plaintiff verbal notice that his failure to call on November 23, 1993, would be interpreted as an act of resignation. Ohio courts do not use the "constructive resignation" doctrine to analyze resignation scenarios where an employer gives an employee verbal notice that his failure to act will signal resignation.[8] *See Waldman,* 88 N.E.2d at 578–79 (finding that a written letter about the employer's policy provided an employee with sufficient notice to determine that his failure to comply with the policy was an act of constructive resignation). Rather courts may only apply this doctrine to cases in which the employer has given the employee *written notice* that his failure to act will be construed as an act of resignation, in order to ensure that each party has a clear understanding of their obligations and the repercussions of their actions. *See, e.g., id.,* 88 N.E.2d at 578–79.

Because Plaintiff here expressed an intention to resign, the district court should have analyzed the circumstances of his resignation under the line of cases describing "effective resignation." *See State Employment Relations Bd.,* 520 N.E.2d at 599.[9] To determine

---

8. The district court's opinion in *Hammon v. DHL,* 980 F.Supp. 919 (S.D.Ohio 1997), has been cited for the proposition that an employer is not required to take any affirmative steps to effect an employee's constructive resignation. *See Govier v. North Sound Bank,* 91 Wash.App. 493, 957 P.2d 811, 817 (Wash.Ct.App.1998). This proposition is only partially correct. For example, an employee can constructively resign by abandoning his position for a substantial period of time, and in these instances his employer is not required to take any affirmative action to complete the employee's constructive resignation. *See Rieke,* 32 N.E.2d at 10. However, when the

employer issues a request and the employee does not comply, the employer must provide the employee with written notice that his failure to act will be construed as an act of resignation in order to establish that the employee's action was an act of constructive resignation. *See Waldman,* 88 N.E.2d at 578–79.

9. Plaintiff argues that a genuine issue of fact remains as to whether his meeting with Sarsfield on November 22, 1993, constituted a resignation. However, Plaintiff's claim is in error because the doctrine of constructive resignation does not apply to this case. Rather, when a plaintiff verbally

whether an employee "effectively resigned," courts examine whether the employee expressed an intention to end his employment, and whether the employee took action to relinquish his position. *See id.* Facts presented at summary judgment clearly show that Plaintiff "effectively resigned" from his job at DHL on or about November 23, 1993.

The evidence presented at summary judgment showed that Plaintiff took the first step in an effective resignation when he expressed his intention to quit his job. On November 20, 1993, Plaintiff told his training instructor, Pebler, that he was going to resign. Again, on November 22, 1993, Plaintiff informed Sarsfield, a second supervisor, that he was going to "go ahead and resign." Plaintiff admits that he kept repeating his intention to resign over the course of the two meetings, despite Pebler and Sarsfield's numerous entreaties that he stay on the job.

The evidence at summary judgment also showed that Plaintiff took the second and final step of an "effective resignation" by taking an action to relinquish his position. *See Ohio State Univ.*, 520 N.E.2d at 599. During the week of November 23, 1993, Plaintiff did not resume his training for the Boeing 727 with the flight instructor class, he did not schedule his check ride, and he did not call Sarsfield to find out whether Sarsfield was assigning him a new flight instructor. *See Dwyer*, 557 N.E.2d at 794 (noting that an employee's failure to report to work or attempt to fulfill the obligations of her position are acts of relinquishment). Indeed, Plaintiff called a number of friends at DHL and a number of union representatives, but he never called anyone at DHL personnel until November 26, 1993. *See Emanuel v. Columbus Recreation & Parks Dept.*, 115 Ohio App.3d 592, 685 N.E.2d 1272, 1276 (Ohio Ct.App.1996) (recognizing that when an employee does not respond at all to his employer during the tenure of an employment dispute this lack of response may indicate that the employee has voluntarily resigned). We need not decide which of these acts standing alone would be a sufficient act of relinquishment. Collectively, Plaintiff's ac-

tions sufficiently confirmed his intention to sever the employment relationship.

Notably, when Plaintiff did call Sarsfield to report his medical condition and attempt to withdraw his statement of resignation, he had already taken both of the steps necessary to complete an "effective resignation." Therefore, when Plaintiff attempted to withdraw his resignation request on November 26, 1993, DHL properly informed him that his voluntary resignation had been completed and that DHL had accepted his resignation.

We review Plaintiff's remaining claims based on the conclusion that Plaintiff "effectively resigned" on or about November 23, 1993, and that therefore he voluntarily ended his employment relationship with DHL.

## B. ADA Claim

The ADA, provides, in pertinent part:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a) (1991). Section 12112(b) of the ADA defines discrimination under § 12112(a) as, among other things, denying employment opportunities to an employee with a disability, "if such denial is based on the need of [the employer] to make reasonable accommodation to the physical or mental impairments of the employee or applicant." 42 U.S.C. § 12112(b)(5)(B) (1991).

To establish a prima facie case of employment discrimination under the ADA, a plaintiff must show that (1) he is disabled; (2) he is otherwise qualified for the position with or without reasonable accommodation; (3) he suffered an adverse employment decision; (4) his employer knew or had reason to know of his disability; and (5) his position remained open. *See Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1185 (6th Cir.1996). The district court held that Plaintiff failed to make a prima facie case under the ADA

expresses an intention to resign, we analyze his case to determine whether he took the necessary

act of relinquishment to complete an "effective resignation."

because Plaintiff failed to show that he had suffered an adverse employment decision or that DHL knew or should have known about his disability. Additionally, the court held that Plaintiff failed to show that he had requested an accommodation during his employment.

We agree with the district court's decision that Plaintiff failed to make a prima facie case under the ADA. Plaintiff failed to show that he was "disabled" within the meaning of the ADA while he worked at DHL. Plaintiff claims that he suffered from an anxiety disorder that interfered with his ability to do his job at DHL. However, by Plaintiff's own admission, he did not meet with a doctor until after he resigned, and the doctor who examined him did not make a diagnosis of his condition. Plaintiff also failed to establish that his employer knew or should have known about his disability. An employer has notice of the employee's disability when the employee tells the employer that he is disabled. *See Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046 (6th Cir.1998). "The employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation." *Id.* at 1046–47. Although Plaintiff told Sarsfield and Pebler about his loss of confidence, by his own admission he never suggested that his emotional problems stemmed from a condition of disability. Plaintiff further failed to establish that he was qualified for his position with or without accommodation. By Plaintiff's own admission, he had trouble flying the 727 Aircraft even before the screaming incident with Mahoney, which was the alleged cause of his nervous condition. Additionally, Plaintiff offered no proof that he filed a request under the ADA while he was at DHL and therefore he failed to prove that he request-

ed an accommodation. Finally, Plaintiff failed to establish that he suffered an adverse employment decision because he voluntarily resigned.[10] Because Plaintiff failed to make a prime facie case under the ADA,[11] the district court properly dismissed his claim.

**C. FMLA Claim**

Plaintiff further alleges that when DHL terminated his employment, it violated the FMLA. Section 2612(a)(1) of the FMLA provides that eligible employees may take twelve weeks of leave within a twelve month period when the employee suffers from "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1) (1993). The term "eligible employee" is defined in § 2611 as "an employee who has been employed for at least 12 months by the employer with respect to whom leave is requested...." 29 U.S.C. § 2611(2)(A)(i) (1995). The statute requires that when leave is foreseeable, the employee must "provide the employer with not less than 30 days notice, before the date the leave is to begin...." 29 U.S.C. § 2612(e)(2)(B) (1993).

An employee does not have to expressly assert his right to take leave as a right under the FMLA. *See Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 761 (5th Cir.1995) (citing *Brannon v. OshKosh B'Gosh, Inc.*, 897 F.Supp. 1028, 1038 (M.D.Tenn.1995)). Once an employer is given notice that an employee is requesting leave for a FMLA-qualifying reason, the employer bears the obligation to collect any additional information necessary to make the leave comply with the requirements of the FMLA.[12] *See id.*

10. Plaintiff argues in his ADA claim that he did not voluntarily resign, and asks this court to find that he suffered an "adverse employment decision" because he was constructively discharged. Constructive discharge occurs when "working conditions [are] ... so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Easter v. Jeep Corp.*, 750 F.2d 520, 522–23 (6th Cir.1984); *see also Keever*, 145 F.3d at 813 (6th Cir.1998). However, because we find that Plaintiff volun-

tarily resigned, there is no need to address this issue.

11. Because Plaintiff failed to offer proof to satisfy four of the elements necessary to make a prima facie case under the ADA, inquiry into the fifth, whether or not his position remained open, is unnecessary.

12. Section 2613(a)(1) qualifying conditions are as follows: (1) the birth of a child; (2) the

The district court properly concluded that Plaintiff failed to establish his claim under the FMLA. Specifically, Plaintiff failed to show that he requested a leave under the FMLA to address his nervous condition prior to his resignation. *See Brohm, M.D. v. JH Properties, Inc.*, 149 F.3d 517, 523 (6th Cir.1998) (noting that an employee who was terminated before he requested relief under the FMLA could not establish a claim under the statute). We have recognized that an employee gives his employer sufficient notice that he is requesting leave for an FMLA-qualifying condition when he gives the employer enough information for the employer to reasonably conclude that an event described in FMLA § 2613(a)(1) has occurred. *See id.* (construing § 2613(a)). However, Plaintiff failed to show that he had given DHL representatives sufficient information for them to conclude that he was suffering from a serious medical condition. The facts at summary judgment showed that before Plaintiff called Sarsfield on November 29, 1998, and told him about Dr. Kreyling's findings, no one at DHL knew Plaintiff had a medical problem. Plaintiff argues when he called Sarsfield he gave the company notice about his condition; however, Plaintiff had already resigned before he called Sarsfield. Plaintiff argues that prior to his resignation, Pebler suggested that he request some time off so that he could regain his confidence. Plaintiff, however, has presented no proof showing that Pebler knew that Plaintiff needed leave because he had a nervous disorder. We conclude that Plaintiff learned of his disorder after he resigned from DHL, and that he informed DHL about his condition after his resignation. Because an employee cannot bring a claim under the FMLA unless he notifies his employer of his condition and requests relief during his employment, we hold that the district court properly concluded that Plaintiff could not establish a claim under the FMLA.

### D. ERISA Claim

Plaintiff argues that the district court erred in granting summary judgment to DHL on his ERISA claim because DHL encouraged him to resign or accepted his resignation in order to prevent him from claiming ADA and FMLA benefits. *See e.g., Hinton v. Pacific Enterprises,* 5 F.3d 391, 392 (9th Cir.1993).

ERISA provides that it "shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140 (1974). ERISA defines the term "participant" as "any employee or former employee of an employer, ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees...." 29 U.S.C. § 1002(7) (1983). The statute grants "participants" a private cause of action. *See* 29 U.S.C. § 1132(a)(1)(B) (1980). We note that the " 'administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing a suit in federal court.' " *Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 453 (6th Cir.1991) (*citing Makar v. Health Care Corp. of Mid–Atlantic*, 872 F.2d 80 (4th Cir.1989)).

To make a prima facie case under ERISA, a plaintiff must show that (1) his employer engaged in prohibited conduct; (2) for the purpose of interfering with any right he had under the plan. *See Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1043 (6th Cir. 1992). Once a plaintiff makes a prima facie case, the employer must introduce evidence of a legitimate non-discriminatory reason for its challenged action. *See id.*

We find that the district court properly granted summary judgment to DHL on Plaintiff's ERISA claim because Plaintiff did not prove that DHL engaged in prohibited conduct in order to interfere with his right to

---

adoption or foster care supervision of a new child; (3) the employee develops a serious health condition preventing him from working; or (4) the employee's daughter, son, spouse or parent develops a serious health condition.

**452**

claim employee benefits.[13] Specifically, Plaintiff failed to show that DHL encouraged him to resign or accepted his resignation in order to prevent him from making a claim under the ADA and the FMLA. The facts at summary judgment established that DHL did not encourage Plaintiff to resign. Indeed, the facts showed that both Sarsfield and Pebler met with Plaintiff and attempted to dissuade Plaintiff from turning in his resignation. Plaintiff also failed to prove that DHL made any misrepresentation about the company's benefit plans that caused him to resign. *See, e.g. Stenke v. Quanex,* 759 F.Supp. 1244, 1246 (E.D.Mich.1991) (describing an employee's equitable estoppel claim against his employer for depriving him of ERISA benefits). Plaintiff contends that DHL was obligated to rescind his resignation when he told the company about his alleged nervous condition. Plaintiff, however, cites no authority to support his position. Given that Plaintiff offered no proof that DHL encouraged him to resign or accepted his resignation in order to prevent him from making a claim for employee benefits, we hold that the district court properly determined that Plaintiff failed to present sufficient evidence to make a prima facie case under ERISA.

## III. CONCLUSION

For the reasons provided above, we AFFIRM the district court's grant of summary judgment in favor of DHL.

---

**13.** Consistent with the district court, we assume, without deciding, that Plaintiff is an ERISA participant.