Arlene S. POWNALL, Plaintiff–
Appellant,

v.

CITY OF PERRYSBURG,
Defendant–Appellee.

No. 01–3947.

United States Court of Appeals,
Sixth Circuit.

April 8, 2003.

Before MARTIN, Chief Circuit Judge, ROGERS, Circuit Judge; and EDMUNDS, District Judge.*

* The Honorable Nancy G. Edmunds, United States District Judge for the Eastern District

PER CURIAM.

Plaintiff, Arlene S. Pownall, appeals from the district court's order granting summary judgment to the City of Perrysburg and denying her motion for partial summary judgment on claims brought pursuant to the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601–2654. The district court concluded that Pownall had effectively resigned her position with the City of Perrysburg and thus did not suffer an adverse employment action as required for recovery under the FMLA. For the reasons that follow, we AFFIRM.

## I.

In March 1995, Pownall began working for the City of Perrysburg, Ohio, as a clerk in the Tax Department. She was a member of the Perrysburg Municipal Employees' Association ("PMEA"), and in June 1999 her supervisor was Lizabeth Larson–Shidler. Pownall's lawsuit against the City and her appeal arise out of her request for a leave of absence in June of 1999.

In 1992, Pownall underwent surgery to receive breast implants. The surgery was performed by Satish C. Vyas, M.D., a plastic surgeon in Dearborn, Michigan. On May 6, 1999, Pownall, suspecting that the implants may have ruptured, visited Dr. Vyas who confirmed that the implants needed to be surgically removed and scheduled surgery for Thursday, June 10, 1999. Pownall knew that her supervisor had scheduled a vacation to begin on June 28, 1999, and planned the surgery so that she would be back by that date. Her doctor would not be in the office in July, and she did not believe she could wait until August for her surgery. Pownall did not inform her supervisor of the scheduled

surgery until June 3, 1999, almost one month after it had been scheduled.

Pownall was off work on Tuesday, June 1, 1999, to have the necessary pre-surgery testing performed.[1] On Thursday afternoon, June 3, 1999, after Dr. Vyas' office had called and told Pownall that her surgery was being moved up from Thursday, June 10, 1999, to Monday, June 7, 1999, she verbally informed her supervisor about her scheduled surgery. In an effort to determine whether it was elective surgery and subject to postponement, Pownall's supervisor asked about the nature of the surgery. Pownall responded that she was not comfortable enough to talk about the surgery with her supervisor. She did, however, inform her supervisor that she would finish all her work before Monday, June 7, 1999.

The following morning, Friday, June 4, 1999, Pownall's supervisor gave her a memo informing her that, for sick leaves exceeding three days, the City required certain information. It was requested that Pownall provide the City that day with: (1) a written absence request and (2) a signed doctor's notice indicating (a) the length of required convalescence and other things that would affect Pownall's return to work such as follow-up visits and work restrictions and (b) the reason the surgery was scheduled without notice, because it would be better from the department's perspective if the surgery could be rescheduled for August (acknowledging that Pownall had previously indicated that the surgeon was unavailable in July). That same morning, Pownall provided her supervisor with a written absence request and report form requesting paid sick leave for surgery from June 7, 1999, through June 28, 1999. Pownall also called her

---

of Michigan, sitting by designation.

1. Pownall had submitted a written request for that day off on May 24, 1999.

doctor's office, read her supervisor's memo to a secretary, and requested the required information. The secretary told her that the doctor's office was closing at noon, but assured Pownall that the doctor's office would fax over documentation. Pownall then took a late lunch (about 2:30 p.m.). Pownall's supervisor found the doctor's Certificate of Disability on the fax machine while Pownall was at lunch. It did not address whether Pownall's surgery could be postponed until August. It merely indicated that surgery was scheduled for June 7, 1999, and that Pownall could return to work on June 28, 1999, without any restrictions.

Around 3:30 p.m. on Friday, June 4th, after Pownall returned from lunch, her supervisor asked her to come to her office. The supervisor had observed that the doctor performing the surgery was a plastic surgeon and thus wanted to inquire again whether the scheduled surgery was something elective that could be postponed. She asked Pownall about the reason for the surgery and whether it could be postponed until August. Pownall found it very difficult to discuss her surgery. After trying to explain to her supervisor why she had to have the surgery as scheduled and her supervisor still not understanding why she could not have it postponed, Pownall told her supervisor, "I guess this means you want me to quit." Despite her supervisor's assurance that she did not want Pownall to quit, Pownall testified that, having said she was quitting, she felt she had to quit. She left her supervisor's office, searched for and filled out forms she believed were necessary for employees permanently leaving their employment, put the completed forms on her supervisor's desk. got her purse and left work early.

After Pownall left. her supervisor conferred with City personnel, and it was determined that, based on her actions, Pownall had voluntarily quit before the City had an opportunity to make a decision on her leave and thus she was no longer considered to be a City employee.

On Monday, June 7, 1999, Pownall had the surgery and was discharged.[2] She did not contact the City in the week following her surgery to indicate that she wanted to return to work. Rather, her first contact with the City came over a week after her surgery and was prompted by a letter from the City summarizing the events of Friday, June 4th, and asking Pownall to confirm her intent to resign: "You did not have your physician respond to the issues of follow-up visits or the emergency/elective nature of the surgery. When I asked you for the information in order to approve your leave you became agitated and finally walked out indicating your desire to terminate employment." On June 15, 1999, Pownall placed a letter addressed to the City Tax Department in an outdoor drop-off box, stating that she believed she was pressured, harassed and humiliated into saying she quit.

On June 16, 1999, Pownall filed a grievance through the PMEA. The grievance was denied, because it was determined that Pownall was not harassed and that she had voluntarily resigned her employment with the City on June 4, 1999. Pownall attempted to return to work on June 28, 1999, and she was asked to leave.

Pownall filed suit against the City on October 27, 2000, alleging that the City violated her rights under the Family and Medical Leave Act; discriminated against

**2.** Dr. Vyas's operative report indicates that he removed the left, intact saline implant and the right, ruptured saline implant; performed abdominoplasty; removed lesions from each cheek; and treated another lesion on the left cheek with a laser; and that Pownall tolerated the treatment well and was in satisfactory condition.

her on the basis of a handicap in violation of Ohio Revised Code § 4112.02(A) and on the basis of her age in violation of Ohio Revised Code §§ 4112.02(A) and 4112.01(N); and committed state torts of intentional infliction of emotional distress, defamation, and wrongful discharge in violation of public policy. The City filed a motion for summary judgment and, in response, Pownall filed a cross motion for partial summary judgment on her FMLA claim and voluntarily dismissed her state-law claims of handicap discrimination and intentional infliction of emotional distress.

On August 16, 2001, the district court granted the City's motion for summary judgment and denied Pownall's motion. It held that Pownall had voluntarily resigned under Ohio law, had not suffered an adverse employment action, and thus could not recover under the FMLA. The district court also dismissed Pownall's remaining state law claims without prejudice.

Pownall argues on appeal that the district court misapplied the summary judgment standard, incorrectly concluded that she voluntarily resigned her job, failed to consider her constructive discharge argument, and incorrectly concluded that it need not consider her FMLA claims because she voluntarily resigned.

## II.

We review the district court's grant of summary judgment *de novo*. *Darrah v. City of Oak Park*, 255 F.3d 301, 305 (6th Cir.2001). "Summary judgment is appropriate where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law." *Valot v. Southeast Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1225 (6th Cir.1997) (citing Fed.R.Civ.P. 56(c)). We review the district court's denial of summary judgment for an abuse of discretion. *Id.*

Contrary to Pownall's argument, the district court properly applied the summary judgment standard and dismissed Pownall's FMLA claims. It applied undisputed facts to Ohio law concerning effective resignations and correctly concluded that Pownall had voluntarily resigned her position on June 4, 1999; had not suffered an adverse employment action; and thus could not maintain her FMLA claim. *See Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 447 (6th Cir.1999).

### A. Effective Resignations Under Ohio Law

Under Ohio law, an employee is deemed to have voluntarily resigned when that employee takes the steps necessary to complete an effective resignation. *Id.* at 448. "An employee must take two steps in order to effectively resign. First, the employee must express an intention to resign. Second, the employee must take some action to demonstrate that he is relinquishing his position." *Id.* (internal quotes and citations omitted). Both steps must be completed in order to be recognized as an effective resignation. *See id. Accord State Employment Relations Bd. v. Ohio State Univ.*, 36 Ohio App.3d 1, 520 N.E.2d 597, 600 (1987) (observing that the plaintiff employee had voluntarily resigned under Ohio law because she had expressed "both an intent to relinquish (the letter of resignation) accompanied by an action of relinquishment (packing her desk and leaving)"). This two-step analysis considers the objective manifestations of an employee's intent rather than evidence of subjective intent.

The district court properly applied the required two-step analysis and determined that Pownall had effectively resigned her position with the City on June 4, 1999. First, Pownall told her supervisor

on that date that she quit and thus expressed her intent to resign. Second, she took actions demonstrating that she was relinquishing her position: after informing her supervisor that she quit, Pownall left her supervisor's office to find and fill out forms she believed she needed to quit, put the completed forms on her supervisor's desk, and left work before the work day was over. The fact that Pownall did not attempt to contact the City for over a week after taking these actions buttresses the conclusion that she effectively resigned on June 4, 1999. Contrary to Pownall's arguments here, the district court relied upon undisputed facts in reaching its conclusion. These undisputed facts are sufficient to show that Pownall expressed an intent to resign accompanied by acts of relinquishment on June 4, 1999. "Collectively, [Pownall]'s actions sufficiently confirmed [her] intention to sever the employment relationship." *Hammon,* 165 F.3d at 449.

■ Although the City subsequently sent Pownall a letter asking her to confirm her resignation, this does not alter the fact that she effectively resigned on June 4, 1999. Similar to the plaintiff in *Hammon,* when Pownall did attempt to withdraw her resignation on June 15, 1999, by claiming she was pressured, harassed and humiliated into saying she quit, she "had already taken both of the steps necessary to complete an 'effective resignation.'" *Id.* Similar to the plaintiff in *State Employment Relations Board v. Ohio State University,* once Pownall's voluntary resignation took effect, she had no right to revoke it, and the City had no duty to reinstate her. *See* 520 N.E.2d at 598. The district court correctly concluded that the City properly refused to allow Pownall to return to work despite her filing a grievance on June 16, 1999, and despite her attempt to return to work on June 28, 1999.

Pownall's reliance on *Davis v. Marion County Engineer,* 60 Ohio St.3d 53, 573 N.E.2d 51 (1991), is misplaced. In *Davis,* the Ohio Supreme Court considered "whether, and under what circumstances," a civil service employee could withdraw a prospective resignation before its effective date. *Id.* at 53. It observed that, prior to the implementation of Ohio civil service laws, "a public employee who resigned from office effective at a future date could not withdraw such resignation absent the consent of the accepting party." *Id.* After the implementation of civil service laws, the *Davis* court concluded that "the crucial factor in determining the legal effectiveness of a withdrawal of resignation from public employment prior to its effective date is the manner of acceptance conveyed by the employer to the employee." *Id.* Accordingly, it held that "a public employee may rescind or withdraw a tender of resignation at any time prior to its effective date, so long as the public employer has not formally accepted such tender of resignation." *Id.* at 55.

*Davis* addresses public employees governed by Ohio's civil service laws, and Pownall does not fall within this category. *Davis* is also distinguishable because it considers the withdrawal of a prospective resignation before its effective date. Pownall's resignation was not prospective. Rather, on June 4, 1999, she expressed an intent to immediately quit and took actions that objectively confirmed that intent. The City's letter of June 8, 1999, did not convert Pownall's immediate intent to quit into a prospective resignation. Accordingly, despite her subsequent actions and the subsequent actions of the City, Pownall had no right to revoke her previous voluntary resignation.

## B. Constructive Discharge

Pownall also argues that the district court erred when it failed to find that a

genuine issue of material fact exists for trial on her claim that, rather than voluntarily resigning, she was constructively discharged on June 4, 1999. The City raised the issue of a constructive discharge in its motion for summary judgment. It argued that Pownall could not establish that she was constructively discharged on June 4, 1999, because she had admitted that prior to June 1999 she had no problem with her supervisor and could not present any evidence showing harassment or intolerable working conditions. Pownall failed to respond to the City's arguments and failed to present evidence demonstrating that a genuine issue of material fact exists on her constructive discharge claim. We do not need to address this argument, as it was not considered by the court below. *See Estate of Quirk v. Comm'r,* 928 F.2d 751, 757–58 (6th Cir.1991).

### C. FMLA Claim Cannot Survive Absent An Adverse Employment Decision

Pownall further argues that, despite the district court's determination that she voluntarily resigned, it improperly dismissed her FMLA claims. This court disagrees. Pownall's argument is based on the erroneous assumption that the City took an adverse action against her. It did not. Rather, as the district court correctly concluded, Pownall voluntarily resigned on June 4, 1999. Her subsequent attempts to rescind that resignation were ineffective under Ohio law. Accordingly, she cannot claim that she suffered an adverse employment decision and cannot maintain a claim that the City violated her rights under the FMLA. *See Hammon,* 165 F.3d at 447.

### III.

For the reasons provided above, we AFFIRM the district court's grant of summary judgment in favor of the City and its

denial of partial summary judgment in favor of Pownall.