**Brandi CARMEN, Plaintiff,**

v.

**UNISON BEHAVIORAL HEALTH GROUP, INC., et al.,
Defendant.**

**No. 3:02 CV 7628.**

United States District Court,
N.D. Ohio,
Western Division.

Dec. 17, 2003.

Dawn T. Christen, John M. Roca, Gallon & Takacs, Toledo, OH, for Plaintiff.

Ruth A. Meacham, Jennifer J. Dawson, Marshall & Melhorn, Four Seagate, Toledo, OH, for Defendant.

## MEMORANDUM OPINION

KATZ, District Judge.

Pending before the Court is Defendants' Motion for Summary Judgment (Doc. No. 27). For the following reasons, the Court will grant in part and deny in part Defendants' motion.

### I. BACKGROUND

At the times relevant to the instant action, Plaintiff Brandi Carmen was employed at Defendant Unison Behavioral Health Group as a community support program provider ("CSP"). As part of her duties, Plaintiff drove throughout the community to meet her clients, many of whom were mentally ill and required assistance in maintaining a safe living space.

On December 24, 2001, Plaintiff injured her foot while at home. On December 25, 2001, Plaintiff went to St. Luke's emergency room for treatment, where Plaintiff was diagnosed with a contusion and sprain of the right foot. On December 26, 2001, Plaintiff notified her supervisor, Defendant Theresa Butler, that she had injured her foot and needed to be off work for approximately the next four days. During a follow-up appointment on December 27, Plaintiff was advised that she had broken her ankle. Plaintiff subsequently notified her work that she had a broken foot and was unable to drive. Plaintiff returned to work on December 31, 2001 and was off intermittent days in January, February, and March for follow-up doctor's appointments. For her time off, Plaintiff received a combination of paid holiday and sick leave.

Due to her inability to drive, upon her return to work Plaintiff was required to complete her job duties via phone or office visits and other CSPs were instructed to give Plaintiff some of their clients to maintain via office visits. Despite the transfer of clients, Plaintiff was unable to meet her billable hours requirements. Prior to her injury and after her return to work, Plaintiff was informed that she was behind in her productivity requirements, specifically her billable hours.

Plaintiff complained that her inability to drive precluded her from visiting clients in the community, but was still nonetheless counseled for failing to meet productivity requirements. Plaintiff ultimately submitted a resignation letter on February 22, 2002, which resignation was effective April 19, 2002, and was subsequently counseled that she was subject to termination during the interim period if she did not keep apace with billing requirements.

Plaintiff now asserts that Defendants interfered with her rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601–2654, in relation to her asserted "serious health condition." Plaintiff reasons that if she had been properly allocated FMLA leave as opposed to sick leave, her absences would have been factored into her billable hours requirements, thus reducing the time she was required to bill. Instead, Plaintiff asserts that she was required to maintain normal productivity requirements and was eventually

constructively terminated for her failure to meet those requirements. Plaintiff appears to make two arguments: first, that defendant unlawfully interfered with her right to FMLA leave, and second, that she was constructively discharged in violation of the FMLA.

Defendant has moved for summary judgment on the basis that Plaintiff did not suffer a serious health condition as defined under the FMLA, did not provide adequate notice of her condition so as to trigger the protection of the FMLA, failed to provide medical certification of her conditions, and did not suffer an adverse employment action

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323–25, 106 S.Ct. 2548. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct.

2505, 2512, 91 L.Ed.2d 202 (1986) (*quoting* Fed.R.Civ.P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *see also Harris v. GMC,* 201 F.3d 800, 802 (6th Cir.2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the non-moving party." *Williams v. Belknap,* 154 F.Supp.2d 1069, 1071 (E.D.Mich.2001) (citing *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987)). However, " 'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,' " *Wiley v. U.S.,* 20 F.3d 222, 227 (6th Cir.1994) (quoting *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505); therefore, "[t]he Court is not required or permitted ... to judge the evidence or make findings of fact." *Williams,* 154 F.Supp.2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.,* 130

F.Supp.2d 928, 930 (S.D.Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505; *see also Atchley v. RK Co.,* 224 F.3d 537, 539 (6th Cir.2000).

## B. FMLA

The FMLA requires a covered employer to provide an eligible employee with up to twelve weeks of unpaid leave if such leave is required, *inter alia,* "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

 The employee must provide the employer with "such notice as is practicable" of her need for FMLA leave. 29 U.S.C. § 2612(e)(2). When it is not practical for the employee to give her employer advance notice, such notice must ordinarily be timely given after the need for leave becomes apparent. 29 C.F.R. § 825.303(a). The employee need not expressly invoke her FMLA rights in order to satisfy this requirement, but she must provide notice of an FMLA-qualifying reason for requesting the leave. Once she provides such notice, the burden then shifts to the employer to obtain any additional information it needs, but the employer "is not required to be clairvoyant." *Slaughter v. American Bldg. Maintenance Co.,* 64 F.Supp.2d 319, 325–26 (S.D.N.Y. 1999); *accord Carpenter v. Refrigeration*

*Sales Corp.,* 49 F.Supp.2d 1028, 1030 (N.D.Ohio 1999).

An employer may require an employee to support her request for leave by having her health care provider furnish a certification stating:

(1) the date on which the serious health condition commenced;

(2) the probable duration of the condition;

(3) the appropriate medical facts regarding the condition; and

(4) a statement that the employee is unable to perform the functions of the position of the employee.

29 U.S.C. § 2613(a) & (b).

The FMLA further provides that "leave ... under this section shall not be taken by an employee intermittently ... unless the employee and the employer of the employee agree otherwise." 29 U.S.C. § 2612(b)(1); *Maynard v. Town of Monterey,* No. 03–5202, 75 Fed.Appx. 491, 493, 2003 U.S.App. LEXIS 19589, at * 4 (6th Cir. Sept. 18, 2003).

## C. FMLA Interference

 To prevail on an interference claim, "a plaintiff must establish that (1) he is an 'eligible employee,' 29 U.S.C. § 2611(2); (2) the defendant is an 'employer,' 29 U.S.C. § 2611(4); (3) the employee was entitled to leave under the FMLA, 29 U.S.C. § 2612(a)(1); (4) the employee gave the employer notice of his intention to take leave, 29 U.S.C. § 2612(e)(1); and (5) the employer denied the employee FMLA benefits to which he was entitled." *Cavin v. Honda of Am. Mfg., Inc.,* 346 F.3d 713, 719 (6th Cir.2003).

### 1. Denial of FMLA leave

 "FMLA regulations make it clear that ... if the employer feels it does not have sufficient information to determine

whether the employee's reasons for requesting leave are encompassed by the FMLA, 'the employer should inquire further of the employee ... to ascertain whether the paid leave is potentially FMLA-qualifying.' " 29 C.F.R. § 825.208(a).[1] The employee need not invoke the FMLA by name in requesting leave for an FMLA-qualifying reason. *See id.* § 825.208(a)(2). *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 935 (6th Cir.2000).

Defendants argue that Plaintiff did not request FMLA leave, and instead requested and was granted sick leave for her absences. Plaintiff argues that she merely filled out the sick leave forms with which Defendants presented her, and was not informed her leave was potentially FMLA qualifying. For the reasons set forth in Plaintiff's memorandum, the Court finds that Plaintiff has provided evidence suggesting that Defendants should have been on notice that Plaintiff's leave was potentially FMLA-qualifying. Plaintiff notified her employer that she would be off work for four days and required continuing medical treatment for her condition. Based on this information, if Defendants did not have enough information to determine whether Plaintiff's leave should have been designated as FMLA leave, they should have inquired further. As set forth above, an employee need not specifically invoke the FMLA, and an employer maintains a duty to ascertain whether leave is FMLA-qualifying. Therefore, the Court finds that Plaintiff's failure to specifically invoke the FMLA when requesting leave does not warrant summary judgment for Defendants.

Defendants also assert that Plaintiff did not have a FMLA-qualifying serious health condition. FMLA regulations define a serious health condition as including a period of incapacity of more than three consecutive days that involves treatment two or more times by a health care provider. 29 C.F.R. § 825.114(a)(2). Here, Plaintiff requested leave for four consecutive days and had a series of follow-up appointments relating to her condition. Therefore, the Court finds that Plaintiff has adduced evidence sufficient to withstand summary judgment as to whether she did indeed have a FMLA-qualifying serious health condition.

■ Defendants further argue that Plaintiff failed to provide the necessary medical certification of her condition. However, the statute provides only that an employer *may* request such certification, 29 U.S.C. § 2613, and the record is devoid of any evidence indicating that Defendant made such a request. Therefore, Plaintiff's failure to provide such certification is not fatal to her claims on summary judgment.

Based on the foregoing, the Court finds that Defendants are not entitled to summary judgment as to interference with Plaintiff's right to FMLA leave.

1. Under the regulation:

> In all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as FMLA-qualifying, and to give notice of the designation to the employee as provided in this section. In the case of intermittent leave or leave on a reduced schedule, only one such notice is required unless the circumstances regarding the leave have changed. The employer's designation decision must be based only on information received from the employee or the employees spokesperson.... In any circumstance where the employer does not have sufficient information about the reason for an employee's use of paid leave, the employer should inquire further of the employee or the spokesperson to ascertain whether the paid leave is potentially FMLA-qualifying.

29 C.F.R. § 825.208(a).

## 2. Constructive discharge

■ In addition to arguing that Defendants unlawfully interfered with her right to FMLA leave, Plaintiff also appears to argue that she was constructively discharged in violation of the FMLA. After careful consideration of the parties' arguments, the Court finds that Defendants are entitled to summary judgment on this aspect of Plaintiff's claims.

■ Where an employee quits her position voluntarily, she may not recover under the FMLA for an allegedly adverse employment action. *See Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 447 (6th Cir. 1999). Here, although Plaintiff ostensibly voluntarily quit her job, she now asserts that she was constructively discharged in violation of the FMLA. In support of this contention, Plaintiff asserts that Defendant required her to perform her job responsibilities from the office as opposed to out in the community and disciplined her for failing to meet billable hours requirements. In relation to the counseling about her billable hours, the counseling was memorialized in writing and copies of the memoranda forwarded to the CEO and Vice President of the agency. In the memoranda, Plaintiff was also informed that failure to meet billable hours requirements could result in further action, including placement on a performance plan or even termination. According to Plaintiff, "knowing that she could not meet her billable hours, [she] turned in a letter of resignation." Pl.'s Opp. Mem. at 24. After tendering her resignation, Plaintiff received another memorandum stating that she would be terminated prior to her separation date if she failed to meet her billable hours requirements during the interim. The foregoing apparently transpired during what Plaintiff describes as "an agency wide crisis to fulfill billable hours because the agency did not have enough clients to allow all the CSPs to fulfill their billable hours." Plaintiff asserts that the foregoing was intended to humiliate Plaintiff and force her to quit. Plaintiff also argues that had she been properly allocated FMLA leave, her billable hours requirements would have been reduced and thus she would not have been harassed at work and eventually constructively discharged.

■ In order to demonstrate constructive discharge, an employee must show that working conditions were so unpleasant and unreasonable that a reasonable person in the employee's shoes would have felt compelled to resign.

"To constitute a constructive discharge, the employer must deliberately create intolerable working conditions, as perceived by a reasonable person, with the intention of forcing the employee to quit and the employee must actually quit." In the case of constructive discharge, "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." "In determining whether an environment is one that a reasonable person would find hostile or abusive and that the plaintiff in fact did perceive to be so, courts look at all of the circumstances." Such circumstances include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance." The circumstances are examined from the point of view of a reasonable member of the protected class.

*Goldmeier v. Allstate Ins. Co.*, 337 F.3d 629, 635 (6th Cir.2003) (citations omitted).

Viewing all the evidence in the light most favorable to the Plaintiff, the Court finds that the work conditions were not so severe that a reasonable person in the Plaintiff's shoes would resign. According

to Plaintiff, nearly every employee was subject to billing hours pressures, yet there is no evidence submitted that other employees found the situation so intolerable as to necessitate quitting. Moreover, Plaintiff's admission of an agency wide billing crisis seems to belie her argument that the admonitions regarding billable hours was causally related to any FMLA protected activity. In the context of this case, if Plaintiff had been granted additional time off under the FMLA, there still would have been no obligation under that statute to reduce her workload. For these reasons, the Court finds that Plaintiff has not adduced evidence sufficient to demonstrate that she was constructively discharged in violation of the FMLA.

### III. CONCLUSION

Based on the foregoing, the Court will grant in part and deny in part Defendants' Motion for Summary Judgment (Doc. No. 27).

The jury trial set May 11, 2004 is confirmed and a final pretrial is set for April 19, 2004 at 11:00 a.m.

IT IS SO ORDERED.