The STATE ex rel. LAYSHOCK

v.

MOOREHEAD.

</div>

[Cite as *State ex rel. Layshock v. Moorehead,* 185 Ohio App.3d 94, 2009-Ohio-6039.]

<div align="center">

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 2009–T–0076.

Decided Nov. 13, 2009.

</div>

Guarnieri & Secrest, P.L.L., and Michael D. Rossi, for relator.

Richard F. Schwartz, Newton Falls Prosecuting Attorney, for respondent.

Per Curiam.

{¶ 1} This quo warranto action is presently before this court for final disposition on the merits, based upon the parties' competing summary-judgment motions and their partial stipulations of fact. Upon reviewing the parties' legal arguments and various evidentiary materials, we hold that relator, Patrick D. Layshock, has established that he is entitled to continue to hold the position of mayor of the city of Newton Falls, Ohio. Therefore, the issuance of a writ of quo warranto is justified to enjoin respondent, Thomas Moorehead, from attempting to exercise the powers of that public office.

{¶ 2} As of July 1, 2009, relator was serving the city of Newton Falls as its duly elected mayor. As a municipal official, relator's various responsibilities are delineated under Article II of the Newton Falls Home Rule Charter. Included in those obligations was the duty to preside over meetings of the city council. In addition to also setting forth the mayor's qualifications, salary, and the manner of his election, Article II provides for the procedure that must be followed when the mayor is absent or disabled, or when he has vacated the position.

{¶ 3} On July 6, 2009, a regularly scheduled meeting of the Newton Falls City Council was held. At the outset of this meeting, relator was present and presided over the proceedings. However, at one juncture, respondent, as the council's vice president, raised a question concerning whether disciplinary action should be taken against relator for certain actions he had previously taken. At that point, relator handed his gavel to the president of city council, thereby relinquishing control over the meeting. He then left the council table and sat in the area of the room that was reserved for the public.

{¶ 4} As part of the usual procedure during regularly scheduled meetings of the Newton Falls City Council, the public is given the opportunity to address the members of council. At that moment of the July 6, 2009 meeting, relator stepped to the podium and announced that he was resigning his position as mayor, effective August 1, 2009. After completing this statement, he excused himself for the evening and immediately left the meeting, despite the fact that the members of council had not adjourned at the meeting.

{¶ 5} Respondent presided over the remainder of that particular meeting. Once it had ended, the city council went into executive session. While discussing the events of the "regular" meeting, respondent stated that in his opinion, the office of mayor had already become vacant. The council members then asked the city law director a series of questions regarding the possible legal effect of relator's actions. Based upon the law director's answers, the members instructed him to inform the county board of elections of the resignation. However, they adjourned the executive session without taking any further actions in regard to accepting the resignation.

{¶ 6} On the morning of July 7, 2009, only one day after the foregoing meeting, respondent contacted Kathleen King, the city clerk for Newton Falls, and instructed her to schedule an emergency meeting of city council for Wednesday, July 8, 2009, at 6:00 p.m. Respondent also told King that the emergency meeting would pertain to the "comments" relator had made during the last council meeting. Consistent with Section 8, Article III of the city charter, King prepared a notice of the proposed meeting and an agenda. She then sent copies of the two documents to each member of city council and to relator. According to King, she completed the basic process of mailing the notices of the emergency meeting by 12:00 p.m. on July 7, 2009.

{¶ 7} Only four minutes after 12:00 p.m. on that same date, relator walked into King's office and handed her a written correspondence. In this letter, he expressly stated that after due consideration, he had decided to rescind his prior resignation and continue his term as city mayor. In giving her the letter, relator did not give King any oral instructions concerning how she should process the document. Nevertheless, the letter was specifically addressed to King and

contained the following request: "Please make sure that all of council receives a copy of this letter."

{¶ 8} Once relator had left King's office, she observed that she had made a mistake in the original notice she had just sent regarding the emergency meeting for July 8, 2009. As a result, she immediately corrected the problem and sent new notices to all concerned parties. This correction process was finished by approximately 1:30 p.m. on July 7, 2009. However, in providing these corrected notices to the members of city council, King did not refer to, or include a copy of, relator's rescission letter. In fact, she did not officially mail copies of the July 7, 2009 letter to the members until Friday, July 10, 2009, when she included it as part of the packet for the council meeting after the emergency meeting.

{¶ 9} On the morning of the emergency meeting of July 8, 2009, relator gave a second written correspondence to King. The purpose of this second letter was to clarify a statement in his first letter as to when the rescission of the resignation was to take effect; i.e., the second letter indicated that he intended to resume his obligations as mayor immediately, not on August 1, 2009.

{¶ 10} Like his first correspondence to King, relator's second letter asked her to again provide copies of the letter to all council members. Although King did ultimately send the requested copies on Friday, July 10, 2009, the council members did not receive actual notice of either letter prior to the emergency meeting.

{¶ 11} At the outset of the emergency meeting, relator tried to take his seat at the city council table. However, respondent immediately informed him that he would not be permitted to preside over the meeting because the council members had concluded that he was no longer the city's sitting mayor. According to respondent, he and his fellow members had determined that the office of mayor had become vacant once relator had left the July 6, 2009 meeting without the permission of council.

{¶ 12} In presiding over the emergency meeting, respondent first moved the city council to consider a new resolution under which relator's resignation as mayor would be accepted. As part of the ensuing discussion, respondent stated that in his opinion, a potential conflict of interest existed because, in addition to serving as the Newton Falls mayor, relator was also a sitting member of the Trumbull County 9-1-1 Board. Based upon this, respondent maintained that the resignation should be accepted as a means of protecting the citizens of Newton Falls.

{¶ 13} After respondent had ended his comments on the proposed resolution, the five members of city council voted unanimously to accept relator's prior resignation as mayor. As a direct result of this vote, respondent was designated

as the "acting" mayor of Newton Falls, pursuant to Section 5, Article II of the city charter. Nevertheless, even though he began to perform the various duties associated with the office of mayor, he never took a separate oath in regard to that office and also retained his seat on the city council.

{¶ 14} Within two weeks of the enactment of the "resignation" resolution, relator brought the instant action for a writ of quo warranto. As the grounds for his sole claim, relator maintained that by assuming the duties of city mayor, respondent had unlawfully usurped that office. In his answer to the quo warranto petition, respondent admitted that the city council had taken requisite steps to accept relator's resignation, but denied that he had "assumed" the office of mayor for the city.

{¶ 15} Once the initial pleadings had been filed and two pretrial conferences had been conducted, the parties were able to agree upon certain stipulations that covered the majority of the facts in the underlying dispute. In conjunction with their stipulations, the parties also submitted six exhibits for this court's consideration. Included in those exhibits were copies of (1) the Newton Falls Home Rule Charter, (2) the minutes of the city council's emergency meeting of July 8, 2009, and (3) letters that had been drafted by either relator or the city law director.

{¶ 16} Immediately after the submissions of their stipulations of fact, both sides moved for summary judgment on specific issues. In considering the merits of the Civ.R. 56 motions, this court also reviewed the substance of the stipulations and the exhibits. Upon completing this review, we concluded that even though the parties had not meant for the stipulations to cover all the relevant facts of this litigation, they had readily intended for the stipulations to act as a substitute for oral testimony in regard to the cited facts. Accordingly, this court accepted both the stipulations and the exhibits for purposes of ruling on the motions for summary judgment in the instant action.

{¶ 17} Regarding the initial requests for summary judgment, our examination of the competing motions indicated that each party had raised one specific point for disposition. In his motion, relator focused upon the effectiveness of the two written correspondences he submitted to King. Specifically, he contended that he was entitled to continue as mayor of Newton Falls because (1) his letters had expressly stated his intention to rescind his prior resignation and (2) his letters had been submitted before the passage of the city council's resolution. On the other hand, respondent's motion raised the issue of whether relator had pursued the appropriate legal action to litigate his basic right to hold the office of mayor. Respondent argued that a writ of quo warranto could never lie in this instance because under the governing provisions of the city charter, the office of mayor would be deemed vacant until the next municipal election, notwithstanding the fact that he would be serving as acting mayor during the interim period.

{¶ 18} On September 30, 2009, this court released a judgment entry in which we overruled respondent's motion for summary judgment. As the basis for that aspect of our determination, this court held that despite the provisions in the city charter governing a "vacancy" in the office of mayor, that office could not be viewed as "vacant" at this time because respondent was presently performing the enumerated duties of that position. That is, we concluded that a writ of quo warranto could possibly lie under the facts of this case because, if relator could establish that he still was entitled to exercise the powers of the office, it would be necessary to enjoin respondent from performing the same acts as relator.

{¶ 19} In regard to relator's summary-judgment motion, our judgment entry stated that respondent had failed to appropriately respond to relator's rescission contention. Our judgment entry further indicated that although such a failure would normally result in a ruling in favor of the moving party, the final merits of the quo warranto claim would still be addressed in light of the significance of the underlying subject matter. Therefore, we ordered that relator's motion would be held in abeyance and that respondent would be afforded a second opportunity to address the rescission issue.

{¶ 20} In now submitting his second response to relator's motion, respondent has filed a second motion for summary judgment on the entire quo warranto claim. As the grounds for his new motion, respondent has asserted a number of counterpoints as to whether relator properly rescinded his resignation prior to the city council's emergency meeting of July 8, 2009. In support of his points, respondent attached to his submission his own affidavit, the affidavits of the other members of city council, and the affidavit of King. In each of the council members' affidavits, it was averred that the members were not aware of the submission of relator's rescission letters at the time they voted on the resolution to accept the prior resignation.

{¶ 21} As part of the orders set forth in our September 30, 2009 judgment, relator was also given the opportunity to file a reply brief on the matter. In addition to restating his basic arguments concerning the effect of his rescission letters, relator attached his own affidavit to the reply brief. As the primary statement in the affidavit, he reiterated a point that had already been established in the parties' stipulations of fact; i.e., both of his correspondences regarding the rescission of his resignation were submitted to the clerk for the city council prior to the beginning of the July 8, 2009 emergency meeting.

{¶ 22} In the two pending motions for summary judgment, the parties to this case have addressed a number of issues that were referred to in our original judgment entry on the merits. Some of those issues pertained to the legal propriety of the procedure that was followed in scheduling the emergency meeting of city council. However, upon reviewing the parties' arguments and

additional evidentiary materials, this court holds that it will not be necessary to render any ruling regarding the legality of that particular meeting. Instead, our final determination in this matter can be predicated solely upon the resolution of the following two issues: (1) did relator totally relinquish his rights to act as mayor of Newton Falls when he left the July 6, 2009 city council meeting prior to its conclusion and (2) did relator give adequate notice to the council members of his intention to rescind his prior resignation of the office of mayor?

{¶ 23} Prior to addressing the merits of the first issue, this court would note that the case law of our state clearly permits a public employee to rescind his resignation of a position or office, unless certain exceptions apply. In *Davis v. Marion Cty. Engineer* (1991) 60 Ohio St.3d 53, 55, 573 N.E.2d 51, the Supreme Court of Ohio held that "a public employee may rescind or withdraw a tender of resignation at any time prior to its effective date, so long as the public employer has not formally accepted such tender of resignation." As to the question of when a resignation has been accepted, the *Davis* court further stated that the mere receipt of the resignation is not sufficient; instead, the public employer must engage in some form of affirmative action, such as the issuance of a written decision, before a finding of an "acceptance" can be made. Id. at 55–56. See also *Bischof v. Mentor Exempted Village School Dist.*, 11th Dist. No. 2007–L–056, 2007-Ohio-6155, 2007 WL 4098825.

{¶ 24} Although not relevant to the final disposition in *Davis*, the Supreme Court further indicated that the withdrawal of a resignation will not be considered enforceable if the employee has already relinquished the position or office. *Davis* at 55, 573 N.E.2d 51. Consistent with this statement, it has been held that "after relinquishing a position, one may not rescind his resignation unless no rights have intervened and the appointing authority consents to that rescission." *Dore v. Miller*, 9th Dist. No. 03CA008416, 2004-Ohio-4870, 2004 WL 2050295, at ¶ 12. Therefore, in light of the foregoing precedent, a resignation of a public employee will always be subject to rescission unless (1) the resignation has already been duly accepted by the appropriate authority or (2) the employee has relinquished the position or office.

{¶ 25} In the instant matter, respondent acknowledges in his present motion that even though relator's resignation was discussed by the members of city council during their executive session of July 6, 2009, the council's final acceptance of the resignation did not take place until the passage of the "resignation" resolution during the emergency meeting of July 8, 2009. As a result, respondent does not attempt to argue that the first exception to the basic right to rescind a resignation is applicable under the facts of this case. Nevertheless, he still contends that by the close of the original council meeting of July 6, 2009, relator had lost his ability to withdraw his prior resignation as mayor.

That is, respondent contends that relator's resignation took effect immediately because his actions during the meeting were tantamount to a complete abandonment of the office.

{¶ 26} In support of this contention, respondent emphasizes that under Section 3, Article II of the Newton Falls Home Rule Charter, the primary duty of the city's mayor is to preside over all meetings of the city council. Respondent then notes that during the July 6, 2009 meeting, relator specifically chose to terminate his performance of this duty by giving control over the meeting to the council's president. Respondent also notes that relator left his seat at the council's table, moved to the area of the room that was reserved for the public, and then left the meeting entirely once he had announced that he was resigning his position. Based upon this, respondent maintains that relator's actions could be interpreted to mean only that he was totally relinquishing his position as the mayor of Newton Falls.

{¶ 27} Although respondent's account of the events at the July 6, 2009 meeting is consistent with the evidentiary materials before this court, we would indicate that the parties' stipulations of fact contained two additional statements regarding the actions of relator. First, the stipulations state that in explaining his decision to resign, relator said that his resignation would not take effect until August 1, 2009. Second, the stipulations stated that immediately prior to leaving the meeting, relator excused himself "for this evening."

{¶ 28} If relator had given his resignation without referring to an effective date, this court would agree that his other actions at the July 6, 2009 meeting would support the inference that he intended to immediately abdicate the office of mayor. However, when relator indicated that the resignation would not take effect until a subsequent date, the logical inference to be drawn from his other actions totally changes. That is, when relator's act of relinquishing authority over the meeting is considered in conjunction with the reference to an effective date, the act could be interpreted to mean only that he was merely surrendering his authority to preside over that particular meeting of city council. This interpretation of his actions is reinforced by the fact that he excused himself only for that evening.

{¶ 29} Our review of the factual stipulations and the parties' additional evidentiary materials readily shows that there is no genuine dispute as to what actually happened during the July 6, 2009 council meeting; thus, the sole question in regard to this matter concerns the proper interpretation of those facts. Pursuant to the foregoing discussion, this court holds that a reasonable person could only conclude that even though relator left the July 6, 2009 meeting early, he still intended to exercise the powers of the office of mayor until August

1, 2009. To this extent, we reject the contention that relator's own actions demonstrated an intention to immediately relinquish the office in question.

{¶ 30} In relation to the "relinquishment" issue, respondent further contends that the fact that relator left the first meeting without the permission of city council supports the conclusion that he completely abdicated his official position. Yet, in presenting this argument, respondent does not cite any provision or section of the Newton Falls Home Rule Charter that states that the city council has the ability to control the attendance of the mayor at a council meeting.

{¶ 31} As to this point, this court must note that under Section 4, Article III of the city charter, the city council does possess the authority to remove any elective official of the city from his office. This section also provides that the decision to remove can be based on the officer's gross neglect of duty, including the failure of a council member to attend three consecutive regular meetings without any justifiable reason. Nevertheless, this authority to discipline an elective official does not imply a separate ability to control any person's attendance at any particular council meeting. In turn, this would mean that an elective official, including the mayor, would have the discretion to leave a particular meeting without obtaining the permission of the council members.

{¶ 32} This court would further note that Section 5, Article II of the charter states that when the mayor is absent or otherwise unable to perform his legal duties, the vice president of council shall become the acting mayor. By providing for the continuation of the municipal government under such circumstances, the charter clearly recognized that there could be instances in which, even though the mayor would temporarily not be able to attend to city business, he did not intend to forfeit the office in its entirety. Thus, the existence of this provision supports the inference that the Newton Falls mayor can take normal temporary absences without having to justify his actions before city council.

{¶ 33} Considered as a whole, the relevant provisions of the city charter do not support the conclusion that by leaving the July 6, 2009 meeting without the consent of city council, relator was abdicating the office of mayor as a matter of law. Furthermore, since relator excused himself only for the evening and stated that his resignation would not become effective until approximately 25 days later, his actions during that meeting did not indicate an intention to immediately quit his position. Accordingly, this court holds that relator never relinquished his authority as mayor prior to the actions of city council during the emergency meeting of July 8, 2009.

{¶ 34} Given our holding on the foregoing issue, the next point to be considered in the instant matter concerns whether relator properly rescinded his resignation prior to the passage of the "acceptance" resolution. In addressing

this point, respondent argues that the two letters that relator submitted to King were not sufficient to provide proper notice to city council, actual or constructive. First, respondent states that under the procedure that had previously been followed in regard to city council, any required notice had to be given to each individual member of the entity. Second, he submits that since copies of relator's rescission letters were not given to each council member until after the July 8, 2009 meeting had concluded, the council did not receive actual notice of the rescission in a timely manner.

{¶ 35} At the outset of this analysis, it must be noted that in regard to the service of notice, Section 3, Article II of the Newton Falls Home Rule Charter provides that the city mayor is to be recognized "as the head of the City government * * * by the Courts for the purpose of serving Civil processes." In light of the specific language in the foregoing quote, it is evident that this section was meant to apply when the city itself was a party to a court proceeding. In contrast, the present situation involves the service or submission of a notice by a municipal officer upon the city council, i.e., an intragovernmental communication. As a result, this court concludes that Section 3, Article II had no application under the facts of this case.

{¶ 36} As to the position of city council clerk, a review of the city charter shows that the entire description of King's job is set forth in Section 14 of Article III. First, the section states that the city council is required to appoint a "City Clerk" and that this person shall also act as the clerk for the council itself. In regard to the actual duties of the clerk, the section provides only that she "shall keep the records of City Council and perform such other duties as are required by ordinance or resolution." In describing the requirements of the position in such a broad manner, the section mimics the language of R.C. 705.10, which generally delineates the duties of a clerk for a municipality.

{¶ 37} Obviously, the wording of Section 14 does not expressly indicate that the city council clerk is the appropriate official with whom to submit an important paper in order to give proper notice to the council itself. However, in reviewing forms of municipal government similar to the configuration followed in the city of Newton Falls, the Supreme Court of Ohio has essentially held that the basic authority of the clerk to accept important papers on behalf of the legislative entity can be inferred from the nature of her position.

{¶ 38} In *State ex rel. Middletown v. Middletown City Comm.* (1942), 140 Ohio St. 368, 24 O.O. 297, 44 N.E.2d 459, the primary issue before the Supreme Court involved whether a signed petition for a referendum regarding a municipal ordinance could be filed with the clerk of the city commission. The constitutional provision governing the referendum process stated that the petition at issue had to be submitted to the "executive authority" of the municipality. Under the form

of government followed in the city of Middletown, the city commission constituted the executive authority because the city charter vested all municipal power in that entity. Despite this, the Supreme Court concluded that it was not necessary to give the petition directly to a member of the commission and that the constitutional provision could be satisfied through the filing of the petition with the clerk for the commission.

{¶ 39} In reaching the foregoing conclusion, the *Middletown* court first noted that under the city charter, the commission clerk had an obligation to " 'keep the records of the city commission, and perform such other duties as may be required by ordinance or resolution.' " Id. at 374, 24 O.O. 297, 44 N.E.2d 459. The *Middletown* court then observed that in a prior opinion, *State ex rel. Tietje v. Collett* (1941), 138 Ohio St. 425, 20 O.O. 548, 35 N.E.2d 568, it had been required to determine whether the clerk of a village could accept for filing the same type of referendum. Upon noting that the duties of village clerk were governed by state statutes instead of the provisions of a charter, the *Middletown* court still found that the nature of the commission clerk's position was similar to the function performed by the village clerk in *Tietje*. Based upon this, the *Middletown* court stated that the following quote from *Tietje* would also be applicable to the commission clerk:

{¶ 40} " 'The foregoing statutory duties of the village clerk reinforce and justify the common belief that the village clerk is the logical official with whom to file important papers, and the natural conduit of information from the people to the officers and legislative officials of village government. His records are open to public inspection (Section 4280, General Code), an attribute of his office which makes logical the filing with him of a paper, such as the present referendum petition, in which other citizens are bound to take an interest.' " *Middletown*, 140 Ohio St. at 375, 24 O.O. 297, 44 N.E.2d 459, quoting *Tietje*, 138 Ohio St. at 430, 20 O.O. 548, 35 N.E.2d 568.

{¶ 41} Upon concluding its comparison of the village clerk in *Tietje* and the city commission clerk in that particular case, the *Middletown* court stated that common sense dictated that the filing of the petition with the city commission clerk was tantamount to submitting the petition to the commission itself; as a result, it was ultimately held that the referendum petition was properly before the city commission for consideration. Id.

{¶ 42} Unlike *Middletown*, the instant action does not involve a question regarding the application of a constitutional provision that delineates the procedure for filing a document with a legislative body. Nevertheless, the underlying logic of the *Middletown* holding would still be applicable to the actions of the city council clerk in this instance. That is, because the city charter provides that the council clerk has a duty to act as the keeper of the council records, she was

clearly intended to accept documents on behalf of council and then distribute them to the individual members. In other words, the clerk was intended to act as a conduit between the city council itself, the other municipal officers, and the public. Therefore, this court holds that the filing of a document with the council clerk acts as constructive notice to the individual council members.

{¶ 43} As part of her affidavit before this court, King stated that it had been her experience that whenever a council member intended to resign his position, he always gave his notice directly to the other council members. However, despite the fact that relator, as mayor, was viewed as a member of city council for limited purposes, the office of mayor is still clearly considered a separate "branch" of the city government, pursuant to the various provisions of the city charter. Under such circumstances, the prior protocol between the members of council would not have applied to relator, and he acted appropriately in officially filing his rescission letters with King.

{¶ 44} As was noted above, copies of the two letters in question were attached as exhibits to the parties' stipulations of fact. Our review of these letters readily shows that relator stated his manifest intention to rescind his prior resignation. Moreover, the stipulations of fact expressly indicate that both of the letters were filed with King prior to the onset of the emergency council meeting of July 8, 2008. In light of these facts, it follows that the sitting members of city council had constructive notice of the rescission prior to the passage of the resolution accepting the resignation. Pursuant to this analysis, the fact that the individual members of council did not have actual notice of the two letters would be immaterial.

{¶ 45} In turn, since the undisputed facts establish that relator properly rescinded his resignation as mayor before it was accepted, the case law of this state dictates that the resignation never became effective. *Davis,* 60 Ohio St.3d at 55, 573 N.E.2d 51. Thus, relator is still entitled, as a matter of law, to hold the office of mayor of the city of Newton Falls, and respondent's present exercise of the powers of that position constitutes an unlawful usurpation.

{¶ 46} In order to prevail in a summary-judgment exercise under Civ.R. 56(C), the moving party must be able to establish that (1) no material factual disputes remain to be litigated, (2) the moving party is entitled to final judgment as a matter of law, and (3) the nature of the evidentiary materials is such that even when the materials are viewed in a manner most favorable to the nonmoving party, a reasonable person could only reach a conclusion that is adverse to the nonmoving party. *State ex rel. Cecil v. Cullota,* 11th Dist. No. 2008–L–185, 2009-Ohio-2622, 2009 WL 1581120, at ¶ 13. In light of the foregoing analysis, this court holds that relator has satisfied the Civ.R. 56(C) standard as to both elements for a writ of quo warranto. That is, the undisputed facts of this case

show that (1) relator has a right to continue to serve as the city mayor and (2) the office of mayor is presently subject to the control of a second person, i.e., respondent. See *Parma v. Cleveland* (1984), 9 Ohio St.3d 109, 112, 9 OBR 336, 459 N.E.2d 528. To this extent, regardless of the precise nature of the alleged charges that form the basis of the parties' underlying disagreement, relator is entitled to continue to wield the authority of the office of mayor until any new proceedings are commenced.

{¶ 47} Immediately prior to the release of this opinion, respondent moved for the dismissal of this matter on the grounds that he was no longer a member of the Newton Falls City Council. In support of this separate motion, respondent asserts that because he had been appointed to complete the term of a council member who had resigned, his own term ended when a recent municipal election was held. He further asserts that the individual who prevailed in the recent election has now taken his seat and that he can no longer be considered the "acting" mayor of the city.

{¶ 48} As to these new assertions, this court would emphasize that respondent has not indicated that the results of the recent municipal election have been certified and that the new member of council has taken his oath of office. Under such circumstances, this court concludes that respondent is still the proper party against whom the writ would lie.

{¶ 49} Consistent with the foregoing discussion, relator's motion for summary judgment is granted, and final judgment is hereby entered in favor of relator as to his entire quo warranto claim. Therefore, it is the order of this court that a writ of quo warranto is hereby issued against respondent, under which he is hereby ousted from the position of "acting" mayor of the city of Newton Falls, Ohio. It is further ordered that respondent and the Newton Falls City Council shall not take any further steps to enjoin relator from exercising the powers of the office of mayor of Newton Falls based on his purported resignation of July 6, 2009.

{¶ 50} It is further ordered that respondent's motions for summary judgment and to dismiss are both overruled.

Judgment accordingly.

TRAPP, P.J., and O'TOOLE and CANNON, JJ., concur.